**DOLPHIN GARDENS, INC.**

v.

**UNITED STATES of America and Western Contracting Corp.**

**Civ. No. 7867.**

United States District Court
D. Connecticut.

June 18, 1965.

David Gill Proctor, Niantic, Conn., for plaintiff.

Jon O. Newman, U. S. Atty., New Haven, Conn., for United States.

Clarence A. Hadden, Pouzzner & Hadden, New Haven, Conn., for Western Contracting Corp.

BLUMENFELD, District Judge.

The plaintiff, Dolphin Gardens, Inc., has brought an action under the Federal Tort Claims Act, ch. 753, 60 Stat. 842 (1946) (codified in scattered sections of 28 U.S.C.), seeking damages for injuries to property in which it held a leasehold interest. The damages were allegedly caused by fumes from dredged material which was deposited by the defendant, Western Contracting Corp., on land owned by Western and the United States pursuant to a contract with the United States. Both defendants have now moved for summary judgment. The Government's motion will be considered first.

The waiver of sovereign immunity established by the Federal Tort Claims Act imposes upon the United States liability for the torts of its employees "in the same manner and to the same extent as a private individual under like circumstances * * *." 28 U.S.C. § 2674. But the reach of the act is subject to fourteen listed exceptions, the first of which is relevant to the present case:

"§ 2680. Exceptions.

"The provisions of this chapter * * * shall not apply to—

"(a) Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

It is the contention of the Government that the activity complained of is a "discretionary function" within the meaning of 28 U.S.C. § 2680(a) and that recovery is barred by that section.

In Dalehite v. United States, 346 U.S. 15, 26–27, 73 S.Ct. 956, 963, 97 L.Ed. 1427 (1953), the Supreme Court read § 2680(a) "as a clarifying amendment to the House bill to assure protection for the Government against tort liability for errors in administration or in the exercise of discretionary functions." And it concluded, at 32, 73 S.Ct. at 966, "that Congress exercised care to protect the Government from claims, however negligently caused, that affected the governmental functions."

A brief statement of the historical origin of governmental immunity is found in Elgin v. District of Columbia, 337 F.2d 152, at 154 (D.C.Cir.1964), where Circuit Judge McGowan said:

"Almost from the very moment of creation by the courts of an immunity initially resting upon the ancient dogma that the king can do no wrong, the judges have been alert to insist that the king be acting as such at the time injury occurs. With kings replaced by city councils[1] as the embodiments of the grace by which men permit themselves to be governed, this alertness was verbalized in somewhat different terms, but the core of the judicial insight remained the same. It is, we believe, essentially this: If a king, or a city council, is to do the job of governing well, then there is something to be said for withholding the threat of answerability in damages for at least some of the actions and decisions which governing necessarily entails. He who rules must make choices among competing courses of action and in the face of conflicting considerations of policy. The capacity and the incentive to govern effectively are arguably not enhanced by the prospect of being sued by those citizens who may be adversely affected by the choice eventually made. Thus it has been thought wise to sweep this restrictive cloud from the ho-

---

1. Conceptually, the principle is the same for any governing body.

826

rizon and to let those responsible for the conduct of public affairs calculate their courses of action free of this intimidating influence. By the same token, in those areas of governmental action where the reason for the rule does not apply, the rule itself is disregarded."

█ The distinction between immunized "discretionary functions" and negligence at the "operational level" has not been clearly drawn, United States v. Gregory, 300 F.2d 11, 99 A.L.R.2d 1011 (10th Cir.1962), and "[t]here is no litmus paper test to distinguish acts of discretion," Ove Gustavsson Contracting Co. v. Floete, 299 F.2d 655, 659 (2d Cir.1962), cert. denied, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963), so that "each case * * * must stand on its own record." Blitz v. Boog, 328 F.2d 596, 599 (2d Cir.), cert denied, 379 U.S. 855, 85 S.Ct. 106, 13 L.Ed.2d 58 (1964).

In this case, the defendant, Western Contracting Corp., entered into a contract with the United States for the dredging and improvement of a portion of a channel in the Thames River. The substance dredged from the river bed was pumped from the dredging barge through a pipe-line to land owned by each of the defendants, part of which was within and part of which was adjacent to the United States Naval Submarine Base. The plaintiff owned a group of apartment buildings about a mile and a half away from where the spoil was deposited. On or about September 30, 1958, the atmospheric conditions, combined with wind from the north, carried gases and other substances emanating from the deposited dredgings to the buildings where the gases allegedly reacted upon the exterior surfaces of the buildings to cause severe damage.

█ The plaintiff does not suggest that responsibility for the damage rests in the decision to dredge the channel, for it is established that such determinations are "discretionary functions" within the meaning of § 2680(a). Unit-

ed States v. Gregory, supra, 300 F.2d 11; F. & M. Schaefer Brewing Co. v. United States, 121 F.Supp. 322 (E.D.N.Y.1954). Rather, it is argued that the "negligence" for which the Government is liable lies in the decision to dump the spoil onto the particular shore-side vacant lots instead of carrying it out to sea, and in the failure to take precautions to prevent the escape of fumes. Yet, it is difficult to see how these decisions differ in kind from those challenged in the Gregory and Schaefer cases.

The Government has filed with the court an unchallenged affidavit of Captain James Monroe Hingson, the executive officer at the United States Naval Submarine Base at Groton, Connecticut, during the period in question. In it, he states that an exhaustive search was made for feasible sites on which to deposit the spoil and that the site selected was the only one of sufficient size available. He further states that it was vitally necessary, because of time factors relating to navigation of nuclear powered submarines on the Thames River up to the Submarine Base, to utilize the site in order to comply with the high priority given to the project by the Secretary of the Navy. The site for deposit of the dredgings was given final approval by the Board of Contract Changes, District Public Works Office, Third Naval District.

██ "Where there is room for policy judgment and decision there is discretion." Dalehite v. United States, supra, 346 U.S. at 36, 73 S.Ct. at 968. Also see Blaber v. United States, 332 F.2d 629 (2d Cir.1964). The selection and approval of the site for deposit of the spoil, and the decision not to take any precautions concerning the possible escape of fumes are far removed from the operational level and fall well within the scope of "discretionary functions" set forth in Dalehite, supra, 346 U.S. at 35, 36, 73 S.Ct. at 956. Thus, in United States v. Ure, 225 F.2d 709 (9th Cir. 1955), the court reversed the decision of the district court and refused to hold the Government liable for lining only part of a canal when the unlined portion even-

tually collapsed. And in Harris v. United States, 205 F.2d 765 (10th Cir.1953), the court held the Government free from liability when herbicide sprayed from a plane onto Government property was carried by the wind to adjoining land causing injury to crops. In each case, the damage was the result of an affirmative decision to act or not to act rather than the negligent performance of a course of action already decided upon. Even if the damages to the plaintiff's buildings might have been prevented by carrying the dredgings out to sea and dumping them there, or if, in some other way, over a million yards of spoil might have been safeguarded from releasing gases to the atmosphere, the decision which was made as to how to carry out what was clearly a governmental responsibility was well within the boundaries of the area of discretion.

Since there is no genuine issue as to the controlling facts, the motion of the Government for summary judgment is granted. Judgment dismissing this action against the United States may enter.

■ The Western Contracting Corp. has also moved for summary judgment. One of the grounds asserted is that it was merely acting pursuant to a government contract and that it may not be held liable for carrying out the terms therein. In Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940), the Supreme Court in refusing to hold a contractor liable for damage caused in diverting the course of a river said, at 20–21, 60 S.Ct. at 414:

"In that view, it is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will. [citations omitted] Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred."

The piping of the dredgings was pursuant to validly conferred authority under a contract. The question of foreseeability of harm and the possible need to protect against it arose when the Government framed its terms. There is no charge that what the contractor did was not what it was required to do. Rather, it is that it was negligent in failing to provide some safeguard against the subsequent escape of the fumes. Yet, as stated above, this was a decision which rested with the Government. The Government did not provide for such additional precautions in the plans, and the Western Contracting Corp. is not to be held liable for this omission. See Myers v. United States, 323 F.2d 580 (9th Cir.1963); Merritt, Chapman & Scott Corp. v. Guy F. Atkinson Co., 295 F.2d 14 (9th Cir.1961); Jemison v. Duplex, 163 F.Supp. 947 (S.D.Ala.1958). To impose liability on the contractor under such circumstances would render the Government's immunity for the consequences of acts in the performance of a "discretionary function" meaningless, for if the contractor was held liable, contract prices to the Government would be increased to cover the contractor's risk of loss from possible harmful effects of complying with decisions of executive officers authorized to make policy judgments.

Since there is no genuine issue as to the controlling facts, Western Contracting's motion for summary judgment is granted. Judgment may enter dismissing this action against Western Contracting Corp.