144 N.J. Super. 1 (1976)
364 A.2d 43
MICHAEL J. SANNER ET AL., PLAINTIFFS,
v.
FORD MOTOR COMPANY ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 6, 1976.
*2 Mr. Morris Brown for plaintiffs (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. James L. Melhuish for defendant Ford Motor Company (Messrs. Morgan, Melhuish, Monaghan, McCoid & Spielvogel, attorneys).
*3 Mr. Edmund Kiely for defendant John Dunphey (Messrs. McDermott & McGee, attorneys).
LONGHI, J.C.C., Temporarily Assigned.
This matter comes before the Court on defendant Ford Motor Company's motion for summary judgment. The material facts are not in dispute.
On August 7, 1973 plaintiff Michael J. Sanner was a passenger in an Army vehicle, commonly referred to as a jeep, which was struck in the right rear by a vehicle owned and operated by John E. Dunphey. The jeep was manufactured by defendant Ford Motor Company. Plaintiff alleges that the accident was caused by the negligence of defendant Dunphey and that the jeep was negligently designed and manufactured without a safety belt, roll bar or restraint, and that this caused the damages he alleges.
The jeep in which plaintiff was riding did not overturn in the accident but he was thrown out of it. Although plaintiff alleges that the vehicle should have had a roll bar, the report of his expert states that a roll bar would not have contributed anything under the circumstances of this accident. Thus, the viable allegations of negligence against defendant Ford are that the jeep should have had seat belts.
The jeep in question was assembled in 1968. It is officially designated as an M151A1 1/4-ton, four-wheel drive utility truck. The vehicle must be capable of performing various military functions, including, but not limited to, serving as (a) a cargo and personnel carrier, (b) battlefield ambulance, (c) weapons platform with a 106-mm. recoiless rifle, and (d) communication vehicle. It is sold directly to the armed forces of the United States in conformity with contractual specifications which did not include the installation of seat belts, roll bars or side doors.
In 1964 the United States Army requested Ford to determine the feasibility of designing seat belts for installation in the M151A1. Such a design was developed by Ford and submitted to the United States Army for acceptance *4 or rejection, which rested solely with the Army, as they could not be installed without prior approval of the Army.
All vehicles are manufactured pursuant to supply contracts designated as Invitation Bid and Award with the Army Tank Corps which, in turn, designates the branch of the service by whom the vehicles would be used. Ford did produce a very limited number of jeeps equipped with seat belts for the United States Air Force. These jeeps were produced by virtue of specific contract modifications that changed the specifications of those vehicles so as to include the installation of seat belts in those vehicles only. This was the only contract for the production of any vehicles to include seat belts and these were only vehicles that were to go to the Air Force.
The United States Army did not consider jeeps equipped with seat belts to be acceptable for the intended uses of the vehicle for, but not limited to, the following reasons: (1) when used in certain tactical situations they could compromise the occupants by deterring immediate egress and escape from the vehicle, and (2) there was the probability of greater injuries to belted occupants in a vehicle such as the jeep without roll bars in the event of a roll over, and the installation of a roll bar would interfere with the design and intent of this military tactical vehicle.
It is undisputed that the United States Government procured the production of these vehicles in conformity with its own engineering specifications and submitted these specifications to qualified prospective bidders. Ford was a successful bidder, and the vehicle involved in this accident was manufactured pursuant to a specific contract (DA-20-113-AMC-07507) and in strict compliance with the United States Army plans and specifications.
Defendant presses its motion for summary judgment on the basis that (1) it had no duty to install seat belts or roll bars, (2) plaintiff cannot under the circumstances of this case show a dangerous defect, and (3) Ford is immune from liability because it complied strictly with a Government contract *5 and manufactured the jeep in conformance to Government plans and specifications.
Plaintiff resists the motion on the basis that a factual issue is presented on (1) the issue of whether the failure to install seat belts constitutes a dangerous defect, and (2) the issue of proximate cause. Plaintiff nevertheless requests the court to rule on the narrow issue of whether (1) assuming a jury finds the jeep to be in a defective condition when it left defendants hands and (2) assuming that the defective condition was a proximate cause of the injuries, defendant Ford will be held strictly liable for plaintiff's damages notwithstanding that Ford strictly complied with Government plans and specifications.
The court finds that defendant Ford Motor Company is entitled to summary judgment since (1) it had no duty to install seat belts, (2) plaintiff under the circumstances of this case cannot show a dangerous defect and (3) defendant manufactured the jeep in strict compliance with Government specifications as required by its contract.
Plaintiff alleges a design defect under the theory of strict liability in tort. The mere allegation of a design defect, however, is not sufficient to remove the case from the realm of ordinary negligence principles. Dreisonstok v. Volkswagenwerk, A.C., 489 F.2d 1066 (4 Cir.1974); Chestnut v. Ford Motor Co., 445 F.2d 967 (4 Cir.1971); Lamendola v. Mizell, 115 N.J. Super. 514 (Law Div. 1971); Prosser, Law of Torts (4 ed. 1971), § 99, n. 72. Whether an action is brought on the theory of strict liability or negligence, "each arises from a misfeasance or nonfeasance in violation of a legal duty" Lamendola, supra at 518. In this case plaintiff fails to state what duty, if any, defendant has breached. The report of plaintiff's expert which was made part of the moving papers states that seat belts "have been, for many years, a known safety feature." A manufacturer is not under a duty to provide every "known safety device." Dyson v. General Motors Corp., 298 F. Supp. 1064 (D.C. Pa. 1969).
*6 In deciding the existence of a duty by the manufacturers to install seat belts in this instance, the utility and purpose of the particular vehicle must be considered. Dreisonstok v. Volkswagenwerk A.C. supra at 1072; Dyson v. General Motors Corp., supra at 1073. This rule is the means by which the Secretary of Transportation is directed to establish motor vehicle safety standards. 15 U.S.C.A. 1381 et seq. As to each Federal safety standard proposed, the reasonableness, practicability and aptness of each is to be weighed as to each particular category of motor vehicle. 15 U.S.C.A. 1392(f)(3). For purposes of occupant crash protection (seat belts, etc.) there are four categories listed by the Federal Motor Vehicle Safety Standard (FMVSS) No. 208. These are passenger cars, bus driver seat, multipurpose passenger vehicles and trucks. From these categories the jeep in question can most likely be classified as a truck/multipurpose vehicle if these standards were to apply. However, the Code of Federal Regulations specifically exempts from compliance with FMVSS "a Vehicle or item of equipment manufactured for, and sold directly to, the Armed Forces of the United States in conformity with contractual specifications." 49 C.F.R. § 571.7(c). Additionally, even if one were to assume that the FMVSS for trucks/multipurpose passenger vehicles did apply to the jeep, Standard No. 208 did not become effective as to passenger cars until January 1, 1968 and seat belts were not required in trucks/multipurpose passenger vehicles until 1972. As previously stated, the vehicle in question was built in January 1968. Even under this act a duty is not imposed across the board, but rather certain factors are considered as to each particular type of vehicle to ensure that the safety requirements to be imposed are reasonable, practicable and appropriate.
Defendant's duty was to manufacture a vehicle in accordance with government specifications applicable to the contract to manufacture the jeep in question. "In every case the utility and purpose of the particular type of vehicle will govern in varying degrees the standards of safety to be observed *7 in its design". Dreisonstok, supra at 1072. The intended use and purpose of this jeep, as determined by the Army, eliminated the installation of a seat belt or roll bar. The proposed installation of seat belts was rejected by the Army because occupants could be compromised due to deterred egress and escape in tactical situations as well as enhancing injuries in the event of a roll-over. The roll bar was rejected because it compromised some of the intended uses of the vehicle. Thus, the Army in its discretion excluded seat belts and roll bars as a design requirement of this jeep.
In an action brought on the theory of strict liability a plaintiff must show a dangerous defect making the product unfit for its intended use in comparison with similar products. Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1963); Santor v. A. & M. Karagheusian, Inc., 44 N.J. 52 (1968); Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965); Scanlon v. General Motors Corp., 65 N.J. 582 (1974). Plaintiff's sole viable allegation of a defect on defendant's part is the lack of seat belts on the military vehicle. Notwithstanding that military vehicles such as this one are specifically exempt from the provisions of FMVSS No. 208, plaintiff through his expert compares the crash worthiness of this jeep with a typical passenger vehicle. Such a comparison is not appropriate. In order to establish a design defect it is necessary to show that the design is dangerously defective in comparison to similar products which are put to the same or similar use.
The defect alleged in this cause of action is the failure of Ford to install a seat belt and roll bar in the jeep. This was not an intentional omission by Ford; rather, seat belts and roll bars were omitted at the specific insistence of the United States Army. Ford complied strictly with the design specifications provided for it by the Army and the omission of the seat belts and roll bars was a requirement imposed by the Government's Invitation Bid and Award Contract. It was the Army that exercised its discretion to omit the seat belts from the design and manufacture of the jeep.
*8 Reliance on government specifications under circumstances such as presented here is a defense which has been recognized. Littlehale v. E.I. DuPont de Nemours & Co., 268 F. Supp. 791 (S.D.N.Y. 1966), aff'd 380 F. 20, 274 (2 Cir.1967). In Littlehale it was held that compliance with government specifications regarding production and labeling of blasting caps negated any duty of the manufacturers to issue warnings regarding their use. In Ryan v. Feeny & Sheehan Bldg. Co., 239 N.Y. 43, 145 N.E. 321 (1924), defendant's compliance with the "plans and detailed specifications" furnished by the United States Government was found to be a valid defense, unless the plans and specifications were "so apparently defective that an ordinary builder of ordinary prudence would be put on notice that the work was dangerous and likely to cause injury." (At 321). The rule of Ryan has been cited with the approval in Person v. Cauldwell-Wingate Co., 187 F.2d 832 (2 Cir.1951), cert. den. 341 U.S. 936, 71 S.Ct. 855, 95 L.Ed. 1364 (1951); Davis v. Henderlong Lumber Co., 221 F. Supp. 129 (N.D. Ind. 1963).
The court in Littlehale, supra, noted that the issue of the contract compliance defense is very much intertwined with the larger government immunity issue, the origin of which lies in Yearsley v. W.A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940). The Supreme Court there set out the rules whereby a governmental contractor is protected from liability for acts done by him in executing performance of a contract with the United States. Cases subsequent to Yearsley have continued that protection as to contractors complying with government specifications. See Myers v. United States, 323 F. 2d 580, 483 (9 Cir.1963); Dolphin Gardens, Inc. v. United States, 243 F. Supp. 824, 827 (D. Conn. 1965); Jemison v. The Dridge Duplex, 163 F. Supp. 947 (S.D. Ala. 1958). Contra, see Merritt, Chapman & Scott v. Atkinson, 295 F.2d 14 (9 Cir.1961). The principle of these cases is summed up in Dolphin Gardens, supra:
*9 To impose liability on the contractor under such circumstances would render the Government's immunity for the consequences of acts in the performance of a "discretionary function" meaningless, for if the contractor was held liable, contract prices to the Government would be increased to cover the contractor's risk of loss from possible harmful effects of complying with decisions of executive officers authorized to make policy judgments. [at 827]
This jeep was manufactured for the United States Government as a military vehicle to be used in tactical military situations, although it has incidental application to nonmilitary settings. The procurement of military equipment by the Government is made pursuant to its war powers and its inherent right and obligation to maintain an adequate defense posture. In carrying out its responsibilities the Government must be given wide latitude in its decision-making process.
Defendant Ford had no discretion to exercise with respect to installation of seat belts, roll bars or other restraints. The decision was that of the Government through its agency, the United States Army. It specifically rejected the installation of these so-called safety devices. To assure the finality of military decision regarding the design and construction of military vehicles and to afford protection to manufacturers complying with such decisions, the Code of Federal Regulations specifically exempts military vehicles from the Federal Motor Vehicle Safety Standard Act. 49 C.F.R. § 571.7(c), supra. That exception is clear and unequivocal.
To impose liability on a governmental contractor who strictly complies with the plans and specifications provided to it by the Army in a situation such as this would seriously impair the governments ability to formulate policy and make judgments pursuant to its war powers. The Government is the agency charged with the responsibility of deciding the nature and type of military equipment that best suits its needs, not a manufacturer such as Ford.
A manufacturer is bound to comply with plans and specifications provided to it by the Government in the production of military equipment. If it does it is insulated from liability.