Robert Allen BROWN and Lola V.
Brown, his wife, Plaintiffs,

v.

CATERPILLAR TRACTOR
COMPANY, Defendant.

Civ. A. No. 80–1147.

United States District Court,
W.D. Pennsylvania.

June 22, 1981.

Tarasi & Tighe, Pittsburgh, Pa., for plaintiffs.

Robert S. Grigsby, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

This matter comes before the court on the defendant's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. The motion for summary judgment is submitted on the pleadings, depositions, interrogatories and answers thereto, requests for admissions and responses thereto, exhibits, and briefs submitted by the respective parties.

The circumstances involved in this products liability action arose on August 20, 1978 at or around the campus of Washington and Jefferson College in Washington, Pennsylvania. The plaintiff, Robert Brown, was a member of the United States Army Reserves at the time of the accident. Plaintiff was being trained to operate a tractor-bulldozer manufactured by defendant as part of his duties in the Army reserves. Plaintiff was in a position to observe the operation of the tractor while seated in a passenger or training seat located forward and to the right of the operator's seat.

The tractor-bulldozer was being operated by Sergeant James Baird in clearing a parcel of land and training the plaintiff. The material being cleared included, dirt, bushes and trees which were being pushed into a pile. As one of the trees was being pushed onto the pile, it came over the blade and over the top of the tractor and struck plaintiff and the driver, Sergeant James Baird.

The tractor-bulldozer was manufactured by the defendant, Caterpillar Tractor Company, and sold to the United States government through the Department of the Army pursuant to a contract designated as DAAKO1–67–1364.[1]

The bulldozer was manufactured in accordance to military specification.[2] It was sold to the United States on or about January 10, 1968, during the Vietnam conflict.

The plaintiff has alleged three traditional theories of liability in a products action: (1) negligence; (2) strict liability under Restatement of Torts 2nd § 402A; and (3)

---

1. A copy of the contract was attached to defendant's motion for summary judgment.

2. Military Specification MIL–T–52270A was attached as an exhibit to the defendant's motion for summary judgment.

breach of express and implied warranties. Basically, the plaintiff has alleged the bulldozer was defective in that it was not equipped with an overhead protective canopy or other device or structure over or around the driver's seat and defendant failed to provide warnings on the safe care and operation of the tractor without a canopy.

Defendant maintains it cannot be held liable since it manufactured for the Department of the Army a vehicle built in strict compliance with government specification. Defendant further contends and asserts as a defense that the tractor-bulldozer was not defective in design or otherwise as a matter of law.

A federal court will grant summary judgment only if the pleadings, depositions, interrogatories and answers thereto, requests for admissions and responses thereto and briefs submitted "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Rule 56, Fed.R. Civ.P.

In considering a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party. *Goclowski v. Penn Cent. Transp. Co.,* 571 F.2d 747, 751 (3rd Cir.1977); *Braden v. University of Pittsburgh,* 552 F.2d 948, 955 (3rd Cir.1977); C. Wright and A. Miller, Federal Practice and Procedure, § 2725, 2727 (1973). The moving party has the burden of establishing that no genuine issue of fact exists. *Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840, 848 (3rd Cir. 1974) citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *United States ex rel. Jones v. Rundle,* 453 F.2d 147, 150 (3rd Cir.1971):

> "Where the moving party initially sustains its burden, summary judgment will be granted unless the opposing party can set forth countervailing evidence establishing a genuine factual dispute. See generally 6 Moore's Federal Practice, ¶ 56.15[3]."

The plaintiff contends that the Caterpillar tractor was defective in that the tractor lacked a canopy, roll-over protective structure (ROPS), or other instrumentality which could have guarded the occupants of the tractor cab area.[3] Plaintiff further asserts that the contract documents are silent as to the requirement of a canopy or other protective device. However, a review of the voluminous contract and military specifications provided by the Army to defendant reveals that the documents are not silent on the critical issue of a canopy. On the contrary, under the heading "Article 2 Additional Modifications to Military Specification MIL–T–52270A DATED 7 November 1966" under Test Method No. 37 it is stated under "Test Procedure," "(a) Mount the Government-Loaned canopy and engine guards." We think this language appearing in the contract documents is specific and significant. The language quoted indicates a desire by the Army, the draftsman of the specifications, to provide certain procedures for testing the tractor-dozer. Said procedures include a provision whereby the Army will supply a "Government-Loaned canopy" for the test procedure.

Indeed, the contract is not silent on the need for a protective device as the plaintiff contends. On the other hand, the specifications which are highly detailed in their terms show an intent on the part of the Army that a canopy would be provided to the manufacturer, Caterpillar. Although Caterpillar is an expert in the design of the machinery involved in this litigation, we feel the Army is the best expert when it comes to the military use of the equipment. This is clear from the overwhelming detail supplied to Caterpillar in the Army specifications. In light of the specifications' clear reference to a canopy to be supplied by the government, and the overwhelming volume of the specifications prepared by the Army for the manufacture of the tractor-bulldozer in question, we find the Army did not contract for a canopy or other roll-over protective structure. We further point out that the term of art "roll-over protective structure" is of no significance to the case *sub judice* since the facts clearly show no roll over of the tractor-bulldozer occurred.

---

**3.** Plaintiff's brief at p. 4.

The defendant's primary defense is that the Caterpillar tractor was not defective as a matter of law in design or otherwise at the time of sale or delivery. This defense is undisputed by the facts appearing in the pleadings, depositions, interrogatories, requests for admissions and briefs which are a part of the record in this case.

Although it is not necessary for the defendant to rely on a line of cases raising a "government contractor" defense, we cannot avoid commenting on the applicability of such cases to the case at hand. See, for example, *Sanner v. Ford Motor Company,* 144 N.J.Super. 1, 364 A.2d 43 (1976) (involving the failure to install seat belts on an Army jeep) and *Casabianca v. Casabianca,* 104 Misc.2d 348, 428 N.Y.S.2d 400 (1980) (involving an Army contracted dough mixer). The plaintiff has set forth in its brief its statement that "... [I]f harm flows from his [Caterpillar] *non-tortious* compliance with the contract documents and specifications, the Defendant is exculpated from liability." We find that Caterpillar's actions in the case *sub judice* under all of the facts and circumstances were non-tortious and that Caterpillar was in compliance with its contractual obligations.[4]

As the court set forth in *Merritt, Chapman & Scott Corporation v. Guy F. Atkinson Co.,* 295 F.2d 14 (9th Cir.1961):

"We find nothing in the record either by way of terms of the contract, or even 'in the context of surrounding circumstances,' to convince us that [Caterpillar was] required by any government directive or authority to do that which was charged against them as negligent acts .... We find no evidence of government compulsion with respect thereto. It is elementary that compulsion must exist before the 'government contract defense' is available."

If the government contract defense was relied on by the defendant here, we do find compulsion for Caterpillar to strictly comply with the government's contract and specifications. Therefore, the plaintiff's argument that compulsion is critical to the defendant's position is inapplicable, but if applicable, would require this court to find the requisite compulsion.

Finally, our attention is called to the opinion of Judge McCune, a member of this court, in *Peter J. Ross et al. v. M.R.C. Corporation* (slip opinion dated August 4, 1980). In said opinion, Judge McCune quotes from the case of *Sanner, supra,* 364 A.2d p. 47, as follows:

"To impose liability on a governmental contractor who strictly complies with the plans and specifications provided to it by the Army ... would seriously impair the governments [sic] ability to formulate policy and make judgments pursuant to its war powers. The government is the agency charged with the responsibility of deciding the nature and type of military equipment that best suits its needs, not a manufacturer such as [Caterpillar]."

For all of the foregoing reasons, the defendant's motion for summary judgment will be granted. An appropriate order will be issued.

---

4. Brief of plaintiff at p. 8.