**Robert Allen BROWN and Lola V. Brown, his wife, Plaintiffs,**

v.

**CATERPILLAR TRACTOR COMPANY, Defendant.**

**and**

**James A. BAIRD, Plaintiff,**

v.

**CATERPILLAR TRACTOR COMPANY, Defendant.**

Civ. A. Nos. 80–1147, 80–1458.

United States District Court, W.D. Pennsylvania.

July 17, 1981.

---

**4.** Brief of plaintiff at p. 8.

Tarasi & Tighe, Pittsburgh, Pa., for plaintiffs.

Robert S. Grigsby, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

This matter comes before the court on plaintiffs' "Motion for Hearing, Reconsideration and Vacation of Order Granting Summary Judgment," filed with this member of the court on June 26, 1981.

On June 22, 1981, this court entered an Opinion and Order granting the defendant, Caterpillar Tractor Company's, motion for summary judgment in the case of *Brown v. Caterpillar Tractor Company*. Also, on June 22, 1981, a companion order was issued granting the defendant, Caterpillar Tractor Company's, motion for summary judgment in the case of *Baird v. Caterpillar Tractor Company*. This companion order adopted this court's opinion in *Brown v. Caterpillar Tractor Company*.

The court held a hearing to reconsider its Opinion and Order granting defendant's motion for summary judgment on July 14, 1981. After oral argument and consideration of the affidavits of Dr. James P. Romualdi, plaintiffs' expert witness, and the voluminous documentation submitted in support of said affidavits in both the *Brown* and *Baird* cases, the court makes the following findings of fact:

### FINDINGS OF FACT

1. Page B49a of the Government's contract provides for modification and/or removal and/or obliteration of any markings not authorized. Plaintiff asserts that Caterpillar should have placed a warning sign on the tractor, that said tractor should not be used for tree clearing operations since such operation might cause injury to the driver or passenger riding on the tractor. No such warning was required by the contract and any such warning would not have been in compliance with the contract.

2. Exhibit E of the contract specifically lists the nomenclature of the "Overpack Kit For Tractor . . . ." No canopy is listed, nor is anything which would remotely be interpreted as a canopy or overhead protective device or roll over protective structure (ROPS) listed.

3. "Additional Modifications to Military Specification MIL–T–52270A Dated 7 November 1966" does not list a canopy, overhead protective structure, or roll over protective structure as a modification for the tractor in question.

4. "Test Method No. 37" entitled "Clearing"[1] specifically states in the test procedure that the tester was to "mount the Government-Loaned canopy and engine guards." This indicates (a) the bulldozer as called for by the specifications was *not* to have a canopy; (b) if and when the Government determined a canopy was necessary, a "Government-Loaned canopy" would be supplied for use; and (c) the Government knew of the dangers involved and did not specify the need or the desire for a canopy except at the Government's insistence.

5. The "Military Specification of 7 November 1966–MIL–T–52270A" does not list a canopy. Section 3.6 of said Specification regarding "Safety" indicates "(A)ll moving parts which are of such nature or so located as to be a hazard to operating personnel shall be enclosed or guarded." However the Specification goes on to read "(P)rotective devices shall not impair the operating functions." It is the court's opinion that upon interpretation of the above quoted language a canopy would have impaired the military operation and functions of the tractor by restricting the operator's field of view.

6. Section 3.18.1 entitled "Seats" of the above-referred to Military Specification relates to the operator's seat and states nothing with respect to a canopy or the need for a canopy although it describes the seat of the tractor extensively.

7. Section 3.27.1 entitled "Instruction plates" sets forth the following: "a tractor shall be equipped with instruction plates or diagrams, including warnings and cautions, describing any special or important procedures to be followed in assembling, operating, or servicing the tractor." The plaintiffs have argued that the tractor should have had a warning plate indicating that the tractor should not be used for tree clearing operations. However, the court has found nothing in the contract or specifications which would require such a warning plate.

8. Section 3.32 of the Military Specification referred to above provides for a "Rifle case." The fact that the tractor was to be supplied with a rifle case indicates the Government's desire to use the tractor for Military applications and in particular for the Vietnam war, a conflict which was in progress during the time period pertinent to this contract. The need for the rifle case is a clear indication that the Government did not desire a canopy on a tractor. Such a canopy would have interfered with the military operation and function of the tractor.

9. Section 4.6.1 entitled "Examination of the Military Specification referred to above provides for an "Examination Schedule." In this schedule specific defects are listed. None of the 60 odd defects listed indicate that the tractor would be rejected by the Government should there not be a canopy on the tractor. Strict compliance with this examination schedule shows that the Government did not consider the absence of the canopy a defect and, as has been mentioned previously, the Government was to provide a "Government-Loaned canopy."

10. Referring to finding No. 10 above, the following specific defects are listed: "150. Instruction plate not as specified." and No. "155. Rifle case not mounted accessible to operator." These listings indicate that the Government determined what was to be on the instruction plates and where they were to be mounted. The rifle case reference indicates the tractor was for combat use and the canopy with the supporting posts would have impaired the operation of the tractor; i.e., the operator's field of view.

■ 11. The plaintiffs rely on a letter to the Government from the defendant dated June 20, 1977 offering to install canopies and more particularly "Roll Over Protective Structures (ROPS).[2] If anything, reference

---

1. Part of Article 2 of "Additional Modifications to Military Specification MIL–T–52270A Dated 7 November 1966 ..."—page 16 of the "Amendment to Request for Proposals" issued February 9, 1967.

2. Plaintiffs also rely upon what appears to be internal memoranda of defendant's "Defense Products Department." See Exhibit 3 of "Plaintiffs' Exhibits," Docket No. 93, filed June 26, 1981.

to this letter should insulate the defendant from liability. The defendant offered to correct the problem the plaintiff calls a defect. The Government refused. Furthermore, the offer to correct the problem was made in 1977. The contract for the tractor in question listed specifications dated November, 1966 and the contract proposal itself was accepted by the Government on March 29, 1967.

The plaintiffs would have this court impose 20/20 hindsight and apply 1977 standards to the tractor that was built in the mid 60's. It is the opinion of the court that such an argument has no merit especially in light of the Government's refusal to install the canopy even in 1977.

### CONCLUSIONS OF LAW

The above Findings of Fact lead the court to conclude as it did in its opinion of June 22, 1981, that as a matter of law there exists no material fact to be litigated in this case. Therefore, upon hearing, review of the affidavits submitted, the documentation in support of said affidavits, plaintiffs' exhibits, and after oral argument, it is the opinion of the court that the defendant, Caterpillar Tractor Company's, motion for summary judgment should still be granted.

The court would be remiss unless it addressed itself to one last issue which has been made by the plaintiff, Baird, at Civil Action No. 80–1458. Plaintiff, Baird, relies upon a decision of the Pennsylvania Supreme Court in *Mayle v. Pennsylvania Dept. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978). In contending that without sovereign immunity the defendant, Caterpillar Tractor Company, can have no "vicarious sovereign immunity," plaintiff's reliance on *Mayle, supra,* is misplaced.[3]

Plaintiff, Baird, states that the case *sub judice* is controlled by *Mayle, supra,* which abrogated sovereign immunity in the Commonwealth of Pennsylvania. To argue that a state supreme court can abrogate sovereign immunity as to the United States government invests far more power in the

various state court systems than was ever envisioned by the founding fathers, and, indeed again raises the nullification theory first developed by Senator John C. Calhoun during the period 1825 through 1836 while serving both as Vice President of the United States and as a member of the United States Senate. The plaintiff would grant to any state court the power, by judicial fiat, to abrogate any law of the United States.

But this cannot be done in the present case. Here the plaintiffs, Brown, at Civil Action No. 80–1147, and Baird, at Civil Action No. 80–1458, sued Caterpillar Tractor Company. Caterpillar cannot be confused with the United States, nor has it raised the question of sovereign immunity. Its position is one of policy; that being a United States government contractor strictly complying with the United States government contract it is insulated from suit by such compliance. This policy consideration was set forth in *Sanner v. Ford Motor Company,* 144 N.J.Super. 1, 364 A.2d 43, affirmed 154 N.J.Super. 407, 381 A.2d 805 (1977).

*Sanner, supra,* held that the United States government as the expert in the particular field for which the contract is made, can set specifications by which the contractor must comply, and such compliance insulates the contractor from liability. Otherwise, the cost of government contracts would be so exorbitant, that the government would be unable to get private manufacturers to supply the government with needed material. In *Sanner, supra,* as here, the government department contracting with the private manufacturer was the Army. It goes without saying that the Army is *the* expert in *military matters.* On that basis alone, policy demands manufacturers under government contracts have limited liability.

Because the United States was not sued in this case and because the Supreme Court of this Commonwealth cannot speak *for the* Congress of the United States on the sub-

---

**3.** It should be noted that the defendant does not rely on the doctrine of vicarious sovereign immunity nor did the court rely on this doctrine in its prior opinion on June 22, 1981.

ject of sovereign immunity as to the United States, this court believes plaintiff's reliance on Pennsylvania law concerning immunity is misplaced.

An appropriate order will be entered denying the plaintiffs' motion for vacation of this court's order granting summary judgment on behalf of the defendant, Caterpillar Tractor Company.