**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2887-22

RICHARD T. BERKOSKI,
individually and as administrator
of the ESTATE OF ANN L.
RAMAGE, MD, deceased,

      Plaintiff-Appellant,

v.

HONDA MOTOR COMPANY,
LTD. and AMERICAN HONDA
MOTOR COMPANY, INC.,

      Defendants-Respondents,

and

HONDA OF TURNERSVILLE,
and JOHN MACNAMARA,
administrator of the ESTATE
OF ELIZABETH MACNAMARA,

      Defendants.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 2, 2025**
>
> **APPELLATE DIVISION**

Argued October 22, 2024 – Decided January 2, 2025

Before Judges Gilson, Firko, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law
Division, Camden County, Docket No. L-1463-20.

Timothy J. Foley argued the cause for appellant (Foley & Foley, Atlee Hall, LLP, and Anapol Weiss, attorneys; Timothy J. Foley, Jeff Gutkowski, and Emily B. Ashe, of counsel and on the briefs).

Wendy F. Lumish (Bowman and Brooke LLP), argued the cause for respondent, American Honda Motor Company, Inc. (Greenbaum, Rowe, Smith & Davis LLP, and Wendy F. Lumish, attorneys; C. Brian Kornbrek, Thomas K. Murphy, III, Wendy F. Lumish, and Paul G. Cereghini (Bowman and Brooke LLP) of the Arizona bar, admitted pro hac vice, on the briefs).

Buchanan Ingersoll & Rooney PC, attorneys for amicus curiae The Product Liability Council, Inc. (Christopher Dalton, on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

This appeal presents the question of whether a motor vehicle is defectively designed because it does not include the latest driver-assistance technologies even though not mandated by federal or state law. Plaintiff contends that a 2016 Honda CR-V was defectively designed because it was not equipped with a lane departure warning (LDW) system and a lane keeping assist (LKA) system. We hold that the absence of those available driver-assistance systems, in a vehicle that was otherwise safe and fit for driving, did not, as a matter of law, establish that the 2016 Honda CR-V was defectively designed within the meaning of the New Jersey Products Liability Act (the PL Act), N.J.S.A. 2A:58C-1 to -11.

The undisputed evidence in this matter establishes that the 2016 Honda CR-V was safe and suitable for driving because it had a functioning steering system that allowed the driver to maintain the intended lane of travel. The vehicle did not become unfit or unsafe because it did not include all existing driver-assistance technologies. Accordingly, we affirm the order granting summary judgment to defendant American Honda Motor Co., Inc. (Honda) and dismissing with prejudice plaintiff's product liability and negligence claims. We also affirm the order denying plaintiff's motion for reconsideration.

## I.

This appeal arises out of a tragic, fatal automobile accident.[1] On August 4, 2018, Elizabeth MacNamara (E. MacNamara) was driving a 2016 Honda CR-V southbound on County Road (CR) 657 in Cape May County. CR 657 is a two-lane road, which is divided by a single dotted yellow line, and which has a fifty miles per hour (mph) speed limit. On the day of the accident, the sky was overcast, but it was not raining.

---

[1] We discern the facts from the summary-judgment record, viewing them in the light most favorable to plaintiff, the party against whom summary judgment was granted. See Rivera v. Cherry Hill Towers, LLC, 474 N.J. Super. 234, 238 (App. Div. 2022).

3

Shortly before noon, the Honda CR-V crossed over the center line and crashed head-on into a 2011 Ford Escape driven by Dr. Ann Ramage. Regrettably, E. MacNamara and Ramage both died as a result of the injuries they sustained in the crash.

The accident occurred on a flat and mostly straight portion of CR 657. Crash data from the Honda CR-V showed that for the five seconds before the crash, the steering torque exerted on the CR-V was zero, indicating that there was no measurable steering input. The crash data also showed that the Honda CR-V had been traveling at between forty-seven to fifty mph, its turn signals had not been engaged, and the brake pedal had not been depressed.

In April 2020, plaintiff Richard T. Berkoski, individually and as the administrator of the Estate of Ann Ramage, his deceased wife, filed a complaint against Honda, Honda Motor Co., Ltd., Honda of Turnersville, and John MacNamara, administrator of the Estate of E. MacNamara. Eventually, the claims against all defendants except Honda were dismissed.

In his complaint, plaintiff asserted claims of strict product liability and negligence against Honda. Although plaintiff did not identify the PL Act as the basis for his product liability claims, the PL Act controls those claims. See Sun Chem. Corp. v. Fike Corp., 243 N.J. 319, 336 (2020) ("If a claim is premised

upon a product's manufacturing, warning, or design defect, that claim must be brought under the [PL Act] . . . ."). He alleged that the 2016 Honda CR-V driven by E. MacNamara was defectively designed and therefore unsafe because it was not equipped with LDW and LKA systems. Plaintiff also asserted that the accident would have been prevented had the two driver-assistance systems been installed in the 2016 Honda CR-V and had those systems been in use on the day of the accident.

When activated, the LDW feature will alert the driver if it detects that the vehicle has unintentionally crossed over a detected lane marking without a turn signal in use. In that regard, it alerts the driver by sending an audible beep and illuminating a lane departure message on the vehicle's information display screen. The LDW feature does not provide any braking or steering assistance.

In contrast, when activated, an LKA system will apply steering torque to help the driver keep the vehicle in the center of the lane of travel. Accordingly, if the vehicle unintentionally crosses a detected lane line, a message will appear on the vehicle's information display screen, an audio alert will sound, and the vehicle will apply steering torque to return the vehicle to the center of its intended lane of travel.

Honda acknowledges that the LDW and the LKA systems were both available in 2016. Indeed, the record establishes that Honda made those systems available in the high-end model of its 2016 Honda CR-V, and that those systems could have been added to other 2016 models for an extra charge if requested.

During discovery, plaintiff produced two expert reports: one from Peter J. Leiss, a design expert, and another from Shawn Harrington, a causation expert. Leiss reported that the LDW and LKA systems were available and economically feasible technologies that could have been added to the 2016 Honda CR-V. He opined that the omission of those driver-assistance systems rendered the 2016 Honda CR-V unsafe. In that regard, in his expert report, Leiss stated:

> The addition of a LDW and LKA system would have prevented [E.] MacNamara's Honda from entering the oncoming traffic and the collision with Ramage's Ford. These systems, as demonstrated in the [studies] cited previously in this report, have the ability to reliably prevent lane departures, such as occurred in this case, by alerting the driver to an impending lane departure and autonomously redirecting the vehicle into its lane of travel. These systems, as demonstrated in the references cited previously in this report, were technologically and economically feasible for several years prior to [E.] MacNamara's Honda being produced.

Harrington tested the performance of the LDW and LKA systems available in 2016 and opined "[h]ad the subject Honda been equipped with the

6

available [LKA system], the subject collision would not have occurred." He also concluded that the LKA system would have warned E. MacNamara to act or would have steered the Honda CR-V back into the southbound lane without driver input.

Plaintiff's experts acknowledged that the 2016 Honda CR-V complied with all mandatory motor vehicle safety standards. In that regard, Leiss testified that there is no "federal or state law that requires the inclusion of every possible technology, even those that may be considered safety systems on every vehicle." Leiss also testified that he had not identified any "mechanical failure" in the Honda CR-V. In other words, the only issue was whether the 2016 Honda CR-V was defectively designed because it did not include the available LDW and LKA systems.

Following the completion of discovery, Honda moved for summary judgment on several alternative grounds. It argued that the 2016 Honda CR-V was not defectively designed, and it had no duty to equip every vehicle with all available technologies. Honda also contended that, under New Jersey law, a manufacturer is not liable if the allegedly unsafe characteristic of the product is known to the ordinary consumer or user. In that regard, Honda asserted that drivers are aware of the need to keep vehicles within their lane of travel and that

the failure to do so could lead to fatal consequences. Additionally, Honda moved to exclude plaintiff's expert opinions on causation as improper net opinions.

In response to Honda's motions, plaintiff did not oppose the dismissal of his negligence claim. Instead, he opposed Honda's motion to dismiss his claim of strict product liability under the PL Act. Plaintiff argued that the question of whether the 2016 Honda CR-V was defectively designed, because it was not equipped with available LDW and LKA systems, was a question for the jury. Plaintiff relied on his experts and their testimony that the LDW and LKA systems were available and feasible alternative designs and that, if the 2016 Honda CR-V had those technologies, the fatal crash that caused Ramage's death would have been avoided. In making that argument, plaintiff maintained that Honda should have provided those technologies even though the 2016 Honda CR-V complied with all other motor vehicle safety standards.

The trial court rejected plaintiff's arguments and held, as a matter of law, that Honda was entitled to summary judgment. The trial court focused on whether the omission of the driver-assistance systems rendered the vehicle not reasonably safe. The trial court reasoned that a manufacturer's duty is to provide a reasonably fit, suitable, and safe product, and that manufacturers do not have

a duty to install every available technology. The court then held that plaintiff was required to show that the absence of the available technologies rendered the vehicle unsafe. Ultimately, the trial court concluded that plaintiff had not shown that the 2016 Honda CR-V was not reasonably safe for its intended use and that there was no evidence of a design defect.

Accordingly, on November 15, 2022, the trial court entered an order granting summary judgment to Honda and dismissing with prejudice all claims against Honda. The court also ruled that Honda's motion to bar expert testimony was moot given its decision on the summary judgment motion.

Plaintiff moved for reconsideration, but on January 6, 2023, the trial court denied that motion. Plaintiff now appeals from the orders granting summary judgment to Honda and denying his motion for reconsideration.

## II.

On appeal, plaintiff argues that the trial court erred in granting Honda summary judgment on the design defect claim because there was sufficient evidence to present that issue to a jury. Plaintiff also argues that although the trial court did not reach the causation issue, he presented sufficient evidence to show that if the 2016 Honda CR-V had included the LDW and LKA systems, those systems would have prevented the collision.

We review a grant of summary judgment de novo, "applying the same standard used by the trial court."  Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).  "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  We do not defer to the trial court's legal analysis or statutory interpretation.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A.    Plaintiff's Design Defect Claim.

Plaintiff's claims are governed by the PL Act.  See Sun Chem. Corp., 243 N.J. at 336 ; Green v. Gen. Motors Corp., 310 N.J. Super. 507, 517 (App. Div. 1998) (explaining that "[u]nder the [PL Act] . . . , the causes of action for

A-2887-22

negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action, the essence of which is strict liability"). See also N.J.S.A. 2A:58C-1(b)(3) ("'Product liability action' means any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty.").

"The Legislature passed the [PL] Act as 'remedial legislation to establish clear rules [in] . . . actions for damages for harm caused by products, including certain principles under which liability is imposed.'" Roberts v. Rich Foods, Inc., 139 N.J. 365, 374 (1995) (quoting N.J.S.A. 2A:58C-1). The PL Act "does not 'codify all issues relating to product liability'; rather, the Legislature intended it to address 'matters that require clarification.'" Ibid.

The PL Act recognizes three types of claims: manufacturing defect, failure to warn, and design defect. N.J.S.A. 2A:58C-2; Rich Foods, 139 N.J. at 375; Dziewiecki v. Bakula, 361 N.J. Super. 90, 97 (App. Div. 2003). In this action, plaintiff asserts only a design defect claim. He claims that the 2016 Honda CR-V was unsafe because it did not include available LDW and LKA systems. He does not claim that the 2016 Honda CR-V had a defective steering system or that there was a failure to warn of the obvious risk of allowing a car

to cross over into another lane where vehicles are traveling in the opposite direction.

To prove a design defect under the PL Act, a plaintiff must establish that the product was "designed in a defective manner." N.J.S.A. 2A:58C-2(c). Moreover, a plaintiff must demonstrate that the product "was not reasonably fit, suitable[,] or safe for its intended purpose." Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95 (1990) (quoting N.J.S.A. 2A:58C-2) (internal quotation marks omitted). Accordingly, "[a] plaintiff must prove either that the product's risks outweighed its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm." Lewis v. Am. Cyanamid Co., 155 N.J. 544, 570 (1998).

Section 3(a)(2) of the PL Act, however, "provides an absolute, affirmative defense for defendants in suits for design defect, if 'the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product.'" Rich Foods, 139 N.J. at 369-70 (quoting N.J.S.A. 2A:58C-3(a)(2)). "Section 3(a)(2) also provides two exceptions that preclude use of the defense: when the product is 'industrial machinery or other equipment [that] is used in the workplace'; and when the danger 'can feasibly be eliminated without

impairing the usefulness of the product.'" Id. at 370 (quoting N.J.S.A. 2A:58C-3(a)(2)) (citations reformatted).

In that regard, Section 3(a)(2) states:

> a. In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if:
>
> . . . .
>
> (2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended, except that this paragraph shall not apply to industrial machinery or other equipment used in the workplace and it is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product . . . .
>
> [N.J.S.A. 2A:58C-3(a)(2).]

The New Jersey Supreme Court has explained "that [S]ection 3(a)(2) adopts the 'consumer expectations' test . . . [and] that the test is really a 'hybrid' provision [that] combines the 'consumer expectations' doctrine for determining whether a product is defective with the obvious-danger factor of the risk-utility

analysis to create a defense to a design-defect claim.'" Rich Foods, 139 N.J. at 376 (quoting Dewey, 121 N.J. at 96) (citations reformatted).

In short, under the PL Act "a product that satisfies the 3(a)(2) standard is, by statutory definition, not defectively designed. If the harm caused by a product 'would be recognized by the ordinary person who uses or consumes the product,' and if the harm stems from an 'inherent characteristic of the product,' N.J.S.A. 2A:58C-3(a)(2), then the harm is not actionable." Id. at 378 (citations reformatted).

Plaintiff does not dispute that the ordinary user of an automobile recognizes that a vehicle needs to maintain its lane of travel and that crossing into a lane where other vehicles are traveling in the opposite direction is unsafe. Plaintiff's experts also do not dispute that an automobile must have a steering system that allows the vehicle to make turns and to cross into or through other lanes when the driver intends to take those actions. Thus, the question in this matter is whether the 2016 Honda CR-V was not reasonably fit, suitable, or safe because it did not have the LDW and LKA systems.

Plaintiff's experts acknowledged that both the LDW and LKA systems were aids designed to help a driver stay within their intended lane of travel. It is undisputable, however, that the driver could not rely exclusively on those aids.

The 2016 Honda CR-V owner's manual expressly stated that "[l]ike all assistance systems, LDW has limitations . . . [o]ver-reliance on LDW may result in a collision," and that "[LKA] is not a substitute for your vehicle control . . . [it] does not work if you take your hands off the steering wheel or fail to steer the vehicle." Indeed, there is no claim that the 2016 Honda CR-V was a self-driving vehicle. More to the point, the undisputed facts established that E. McNamara was controlling or responsible for controlling the steering of the 2016 Honda CR-V at the time of the accident. Therefore, applying N.J.S.A. 2A:58C-3(a)(2), the inherent risks of driving the 2016 Honda CR-V could not "feasibly be eliminated" through the inclusion of these features.

We recognize that in many situations if a plaintiff has experts who will testify that the product could have been made safer without impairing the usefulness of the product, the question of whether there is a design defect is an issue of fact for the jury. Am. Cyanamid Co., 155 N.J. at 568 ("if the proofs supporting the position of the non-moving party and the reasonable inferences drawn therefrom reveal a contested issue of fact regarding the practicality and feasibility of a proposed alternative design, the issue should be resolved by the jury"); Gen. Motors Corp., 310 N.J. Super. at 517-18. Moreover, we recognize that car manufacturers "may have a duty to install safety devices regardless of

whether it was the custom of the trade." Michalko v. Cooke Color and Chem. Corp., 91 N.J. 386, 397 (1982) (citing Bexiga v. Havir Mfg. Co., 60 N.J. 402, 406-11 (1972)).

Nevertheless, we do not read the PL Act as allowing plaintiff to claim a design defect merely because there were available driver-assistance technologies. See Sanner v. Ford Motor Co., 144 N.J. Super. 1, 5 (Law Div. 1976) ("[a] manufacturer is not under a duty to provide every 'known safety device'"), aff'd, 154 N.J. Super. 407 (App. Div. 1977); Huddell v. Levin, 537 F.2d 726, 735 (3d Cir. 1976) (finding that "[an automobile] manufacturer is not required to produce an accident-proof vehicle" under New Jersey law). Plaintiff has made no showing that the 2016 Honda CR-V was unsafe because it did not have either or both the LDW and LKA systems. Those systems might have aided E. McNamara, but they did not replace the obvious expectation among consumers that a 2016 motor vehicle required steering.

Given the specific facts of this case, we hold that Honda was not under a duty to provide the LDW and LKA systems, which were not uniformly installed in all 2016 passenger vehicles. Indeed, to accept plaintiff's design defect argument would be to impose on all purchasers and users of passenger vehicles the requirement and cost of having the LDW and LKA systems installed and

16

activated in their vehicles.  In short, we do not read Section 3(a)(2) of the PL Act to allow plaintiff's claim because doing so would broadly expand the potential liability of manufactures when "the Legislature's policy [was] to limit the liability of manufacturers so as to 'balance[] the interests of the public and the individual with a view towards economic reality.'"  Rich Foods, 139 N.J. at 374 (quoting Shackil v. Lederle Labs., 116 N.J. 155, 188 (1989)) (internal quotation marks omitted).

The PL Act "has not appreciably altered the common law interpretation of risk/utility analysis outside of the . . . absolute defenses."  Cavanaugh v. Skil Corp., 164 N.J. 1, 8 (2000) (alteration in original) (quoting Fabian v. Minster Mach. Co., 258 N.J. Super. 261, 271-72 (App. Div. 1992))  (internal quotation marks omitted).  In the rare case "when the risk-utility analysis points to the appropriate result as a matter of law," the court, not the jury, "resolves factual issues arising from a risk-utility analysis."  Am. Cyanamid Co., 155 N.J. at 568 (citing Dreier et al., N.J. Prod. Liab. & Toxic Torts L., § 5.2 at 29 (1998)).  See also Model Jury Charges (Civil), 5.40D-3 n.12, "Design Defect – Legal Tests of Product Defect" (approved Apr. 1999) ("Initially, the Risk-utility analysis is for the court, not the jury.  It is the trial court which decides whether a product is so

clearly more useful than dangerous that a decision in favor of the defendant is to be made as a matter of law.").

In this case, we hold that the 2016 Honda CR-V was "reasonably safe" as a matter of law. In reaching this conclusion, we have considered the foreseeability of the risk of harm and consumer expectations. It is undisputable that currently it is understood that the safe operation of a motor vehicle is dependent on the driver's diligence in steering the vehicle and using the vehicle's systems to control speed and braking. What future technologies may bring are not before us. Instead, our ruling is based on the record in this matter and the technologies available in 2016.

We point out that our holding is consistent with the Restatement (Third) of Torts: Products Liability § 2 (Am. L. Inst. 1998) (hereinafter Restatement). The Restatement explains that "[a] product . . . is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design . . . and the omission of the alternative design renders the product not reasonably safe." Id. § 2(b). A court may consider a broad range of factors in determining "whether an alternative design is reasonable and whether its omission renders a product not reasonably safe." Id. § 2 cmt. f. These factors include "the magnitude and

probability of the foreseeable risks of harm . . . and the nature and strength of consumer expectations regarding the product." Ibid. Additionally, "the likely effects of the alternative design on production costs . . . and the range of consumer choice among products are factors that may be taken into account." Ibid.

Further, the likely effects of the driver-assistance systems on production costs and the range of consumer choice support our determination. Restatement § 2 cmt. f. As previously discussed, the record establishes that the LKA and LDW systems were available in the high-end model of the 2016 Honda CR-V and could have been added to other 2016 models for an extra charge if requested. Considering these increased costs, many consumers chose not to purchase vehicles with these features or to include them in their vehicles. Moreover, drivers with those systems could choose not to use them. Thus, the 2016 Honda CR-V was "reasonably safe" under the principles identified in the Restatement as a matter of law.

In reaching our conclusion, we have also considered the points raised by the Product Liability Council, Inc. (the PL Council), which filed an amicus curiae brief in support of Honda's position. The PL Council pointed out that technologies like driver-assistance systems are generally phased in over time

19

and to require their installation all at once would lead to performance problems. In support of this argument, the PL Council cited to <u>Geier v. American Honda Motor Co.</u>, 529 U.S. 861, 862-63 (2000), where the United States Supreme Court favorably discussed a federal motor vehicle safety standard which "deliberately sought to gradually phase in passive restraints" to "help develop data on comparative effectiveness, allow the industry time to overcome safety problems and high production costs[,] . . . and facilitate the development of alternative, cheaper, and safer passive restraint systems." We find merit in a phased-in approach to new technologies and that the approach is consistent with the PL Act. Accordingly, we believe that if there is to be a change in product liability law, it should be made by the Legislature, which can consider the broad implications of that change.

B.    Causation.

"Causation is a fundamental requisite for establishing any product-liability action. The plaintiff must demonstrate so-called product-defect causation - - that the defect in the product was a proximate cause of the injury." <u>Coffman v. Keene Corp.</u>, 133 N.J. 581, 594 (1993) (citing <u>Michalko</u>, 91 N.J. at 394).

The trial court in this matter did not reach the issue of causation. Honda urges us not to address that alternative ground for granting summary judgment, reasoning that the record on causation was not fully developed. Because we agree that the causation issue is not fully developed in the current record, we do not make a ruling on that issue.

Nevertheless, we do point out that plaintiff's experts did not appear to have established that the installation of LDW and LKA systems in the 2016 Honda CR-V would have prevented this fatal accident. Nowhere in the current record is there proof as to E. McNamara's condition at the time of the fatal accident. Nor is there any proof that she would have activated the LDW and LKA systems or that she would have responded to their warnings. In other words, even if we did not affirm on the issue of design defect, this matter would require further analysis by a judge on the causation issue before it could proceed to a jury trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2887-22