JAMES V. HUNT, JR., Adm'r of the Estates of Shahram Dehnad, Deceased, and Kamyar Arjomand, Deceased, *et al.*, Plaintiffs-Appellants, *v.* ROBERT BLASIUS *et al.*, Defendants.—(FOSCO FABRICATORS, Defendant-Appellee.)

Fourth District No. 14069

Opinion filed December 12, 1977.

Costigan & Wollrab, of Bloomington, and Rolland H. Stimson, of Chicago (William F. Costigan and James T. Finegan, of counsel), for appellants.

Livingston, Barger, Brandt, Slater and Schroeder, of Bloomington (Thomas M. Barger, III, of counsel), for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal involves another foray into that only partially-charted *terra incognita* of the law, known as strict liability in tort.

On April 30, 1970, one of plaintiff's decedents was the owner-operator of a motor vehicle proceeding in a southerly direction on Interstate Highway 55 near Normal, Illinois. The other plaintiffs were passengers in the vehicle. An exit sign pole, bearing the legend, "Normal-El Paso Exit," was located two feet off the shoulder of the highway. It contained over 1100 pounds of steel and was imbedded in concrete. The vehicle left the highway and collided with the pole. The impact killed two of the occupants and seriously injured the other three.

The defendant Fosco Fabricators (herein Fosco) was the manufacturer and installer of the pole and sign. Both the manufacture and installation were done in accordance with plans and specifications created and furnished by the State of Illinois with whom Fosco had a contract for such manufacture and installation of the pole in question and others along the particular stretch of Interstate 55. Fosco completed its contract and its work was approved and accepted by the State about 3½ years before the accident.

An original complaint was filed against all defendants and subsequently dismissed as to Blasius, Jeremenc and McDougal-Hartman Company. An amended complaint against Fosco only was then substituted. In it, plaintiffs advance two theories—negligence in failing to follow modern methods of highway construction, failure to erect "break-away" poles, creating an unusually dangerous condition along the highway and otherwise negligently constructing, designing and controlling the pole; and strict liability in designing and installing a pole inconsistent with modern highway construction, designing and installing the pole, anchoring solid steel in concrete within three feet of the roadway, all of which were alleged to be unreasonably dangerous.

Both sides moved for summary judgment. The trial court granted Fosco's motion and ruled that Fosco was an independent contractor and relieved of any liability since the post was not an imminently dangerous object. The trial court noted that its decision would be the same on either theory advanced, negligence or strict liability. This appeal ensued.

Central to the disposition of this case are two undisputed facts: (1) that the pole was manufactured and installed according to the design and specifications mandated by the State of Illinois, and (2) that Fosco was neither an employee nor an agent of the State, but simply a bidder on a public contract.

Turning first to the charge of negligence, the trial court placed reliance on *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 40, 139 N.E.2d 275, 282-83, wherein the supreme court said:

"The general rule is that where an independent contractor is

employed to construct or install any given work or instrumentality, and has done the same and it has been accepted by the employer and the contractor discharged, he is no longer liable to third persons for injuries received as the result of defective construction or installation. [Citation.] This rule, however, is subject to certain well recognized exceptions whereby a contractor may be held liable even after acceptance of his work by the contractee (1) where the thing dealt with is imminently dangerous in kind, such as explosives, poisonous drugs, and the like, (2) where the subject matter of the contract is to be used for a particular purpose, requiring security for the protection of life, such as a scaffold, and (3) where the thing is rendered dangerous by a defect of which the constructor knows but deceitfully conceals, and which causes an accident when the thing is used for the particular purpose for which it was constructed. [Citations.]"

*Harris* was a negligence case and was decided prior to *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182. Hence, it is dispositive of the negligence theory in the case at bar, unless the pole can be brought within the "imminently dangerous" exception. There is no contention that the other two exceptions have any application here.

The *Harris* court did not undertake to define the term "imminently dangerous," but rather used examples of "explosives, poisonous drugs and the like." Webster's New International Dictionary (2d ed. 1941) defined "imminent" as "threatening to occur immediately." Webster's Dictionary of Synonyms (1st ed.) lists as analogous words: "inevitable, ineluctable, inescapable, unavoidable."

■■ It may therefore be deducted that "imminently dangerous" means that the danger exists in the very nature and purpose of the product. Tested by these standards, we do not believe that the pole was imminently dangerous.

Plaintiffs cite *Kinsch v. Di Vito Construction Co.* (1964), 54 Ill. App. 2d 149, 203 N.E.2d 621, for the "imminently dangerous" doctrine. *Kinsch* is distinguishable. There a contractor had removed a concrete head wall and placed it on the shoulder of the road in order to construct a sewer. The court noted that drivers must occasionally use the shoulder in emergencies and other situations. In the case at bar, the pole was more than two feet off the shoulder in an area where no traffic would be expected. Furthermore, the accident in *Kinsch* occurred during the course of construction, not more than three years later as in the case at bar.

Plaintiffs place further reliance on *Watts v. Bacon & Van Buskirk Glass Co.* (1959), 18 Ill. 2d 226, 163 N.E.2d 425. In that case the plaintiff was injured when a glass door shattered. The trial court directed verdicts of not guilty for the owners of the store and the glass company which

furnished the door. The jury found the tenant not guilty. Appeal was taken only as to the owner and the glass company. The appellate court reversed as to the owner but affirmed as to the glass company. The supreme court affirmed the appellate court, which pointed out:

"The testimony establishes that it was possible that the difference between plate and tempered glass was explained to Greenman [the owner]; that the difference in price was discussed; and that Greenman was told that plate glass was cheaper.

Greenman wanted an inexpensive door and ordinary plate glass of ¾ inch thickness was used with his approval and agreement." 18 Ill. 2d 226, 229, 163 N.E.2d 425, 427.

*Watts* thus follows the doctrine of *Harris* by relieving the independent contractor of liability in negligence and placing the blame on the originally responsible party, the owner who had specified and chosen the particular type of glass. It does not support plaintiffs' theory and in truth is favorable to defendant.

■■ An analogy may be found in *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617, and *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307. In those cases the supreme court held as a matter of law that unreasonable dangers and unreasonable risks of injury were not created under the facts of each, and thus indicated that such matters are susceptible of being determined as a matter of law rather than of fact. We therefore feel justified in holding as a matter of law that the pole was not imminently dangerous, since it was unlikely that the accident would occur.

We conclude that the trial court was correct in rendering summary judgment as to the negligence aspect.

Turning next to the alternative theory of strict liability, we believe a fair reading of plaintiffs' amended complaint alleges a design defect. We find no contention in the record that the specific pole in question was any different from many others produced under the contract. The trial court indicated this his ruling would be the same on either theory under the authority of *Harris*. We believe that this may be an over-simplification of the problem.

■■ As we view the record, the case presents a question of first impression in Illinois. If applicable governmental standards and specifications are mandatory requirements for sale of the product to that governmental entity and from which a manufacturer cannot deviate, is liability precluded in any respect in which the product complies? We answer in the affirmative.

Our research has revealed only a few authorities in this area and admittedly none of them is exactly and precisely on all fours with the instant case. However, we find them persuasive.

18

The first of these cases is *Littlehale v. E. I. duPont DeNemours & Co.* (S.D.N.Y. 1966), 268 F. Supp. 791, *aff'd*, 380 F.2d 274 (2d Cir. 1967). It started as a negligence action but that theory was abandoned before judgment was reached and the district court, while not expressly stating that it was deciding a strict liability case, made numerous references to such a case and cited much authority in that field. We believe that since negligence, failure to warn, and strict liability are all grown from the same root, *Littlehale* is persuasive in the strict liability sitution. In that case the defendant had manufactured blasting caps pursuant to a contract with the war department and had fully complied with the department's specifications. Some 13 years later, plaintiffs, who were civilian employees of the navy department, were injured when the caps detonated. In the course of the proceedings, plaintiffs abandoned their negligence claim and based their cause of action on a failure of the defendant to warn them of the nature of the product. As we have already stated above, the language of the court blurs from failure to warn into strict liability and to some extent intermingles the doctrines, but we still find it persuasive.

The court entered summary judgment for the defendant which was affirmed on appeal. At page 802, footnote 16, the court said:

> "In the 'typical' products liability case, the manufacturer of the product, having the sole decision as to the method and means of manufacture and all other details, is in reason the party to be charged since it is his act or failure to act which was the proximate cause of the accident. The case at bar, however, presents a different picture since here an independent contractor having no discretion or control over production and means of manufacturer is directed to comply with the strict contract requirements and specifications contained therein. It is in that situation that the 'independent contractor' exception is applicable, relieving the independent contractor of liability if he follows plans which are not so glaringly or patently insufficient that an ordinary prudent manufacturer would not follow them."

At page 801 the court said:

> "In considering the applicable law, it is at least helpful to recognize this case for what it is not. It is not a case involving a product manufactured for sale or resale to the general public. It is not a case involving negligence in the manufacture, design or use of materials. It is not a case where the manufacturer had any freedom of choice as to manufacturer, design or use of materials. It is not a case where evidence has been submitted upon which foreseeability of the particular use involved herein could be predicated. It is not a case involving a product such as a heating

brick, paint, agricultural or horticultural germicide or similar product, or other material which, while inherently dangerous in connection with certain use, is not generally known to be so * * *. We are not, as suggested by plaintiffs, dealing with a contract by which both parties to that contract are attempting to relieve themselves of all liability arising out of the use of such product by third parties * * *. The sole question is the liability of defendant herein, not the liability of the Government, or others not parties hereto."

We concur in the court's reasoning, especially in that a manufacturer's acts in accordance with plans and specifications of another are to be tested by a different standard from those of a manufacturer who has sole discretion over the manner in which the product is produced. In Illinois, *Suvada* made clear that all persons in the chain of distribution from the manufacturer on down have potential liability, but *Suvada* was concerned with products designed and sole for use by the general public and not for use by a governmental entity and to its specifications.

*Littlehale* was followed in *Sanner v. Ford Motor Co.* (1976), 144 N.J. Super. 1, 364 A.2d 43. In that case plaintiff sued Ford for a design defect, specifically, failure to include seat belts in jeeps manufactured by Ford for the U.S. Army. The specifications excluded seat belts in order that riders in a jeep might dismount more quickly and expeditiously. Summary judgment for Ford was granted by the New Jersey court which said:

"The defect alleged in this cause of action is the failure of Ford to install a seat belt and roll bar in the jeep. This was not an intentional omission by Ford; rather, seat belts and roll bars were omitted at the specific insistence of the United States Army. Ford complied strictly with the design specifications provided for it by the Army and the omission of the seat belts and roll bars was a requirement imposed by the government's Invitation Bid and Award Contract. It was the Army that exercised its discretion to omit the seat belts from the design and manufacture of the jeep." 144 N.J.Super. 1, 7, 364 A.2d 43, 46.

The court then went on to cite with approval *Littlehale*, together with *Ryan v. Feeney & Sheehan Building Co.* (1924), 239 N.Y. 43, 145 N.E. 321; *Person v. Cauldwell-Wingate Co.* (2d Cir. 1951), 187 F.2d 832, *cert. denied* (1951), 341 U.S. 936, 95 L. Ed. 1364, 71 S. Ct. 855; and *Davis v. Henderlong Lumber Co.* (N.D. Ind. 1963), 221 F. Supp. 129.

Other courts have gone so far as to preclude liability in the absence of governmental specifications. (See, *e.g., Spangler v. Kranco, Inc.* (4th Cir. 1973), 481 F.2d 373.) Since the matter is not before us, we make no judgment on the question of private specifications.

A government contract must of necessity be different in nature from private undertakings. Nearly all government purchases and contracts are taken by open bidding; necessity exists to obtain the widest possible field of bidders in order to preserve tax revenues. Should bidders feel apprehensive that they might be sued for following specifications, either of two untoward results could ensue: (1) There would be no bids, or (2) bids would be inflated to take care of any potential liability. Public policy dictates that bidders who comply strictly with governmental specifications should be shielded from liability in any respect in which the product complies.

We desire to make plain what we are not deciding. A considerable body of law has grown up concerning a violation by a manufacturer of statutes or rules of governmental agencies. These cases revolve around common items, not made to specification. The prevailing rule is stated in section 288C of the Restatement (Second) of Torts (1965) as follows:

"Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions."

Likewise, a general statement is contained in the Consumer Product Safety Act, 15 U.S.C. §2074(a) (Supp. III 1973):

"Compliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person."

We make no judgment in these cases which are not before us. Our decision is limited to products *sui generis*, manufactured strictly in accordance with specifications laid down by governmental authority.

We find an analogy to our decision in the recent case of *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857. While the decision was primarily concerned with questions of indemnity and its main thrust was to eliminate negligence as an element in indemnity actions growing out of strict liability, the court quoted with approval 2 L. Frumer and M. Friedman, Products Liability §16A(4)(b)(i), as follows:

"'* * * It is a liability based upon the placing into commerce of a product which, if defective, is likely to be unreasonably dangerous under normal use. *There is, therefore, no reason why the responsibility should not trace back to the originally responsible party. * * *'* " (Emphasis added.) 62 Ill. 2d 77, 82, 338 N.E.2d 857, 860.

In the case at bar, the "originally responsible party" is the State of Illinois. Fosco was at best only a conduit.

A further analogy is found in another recent case, *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1. In *Winnett*, the supreme court

introduced the concept of status into products liability litigation. Admittedly, it was the status of the plaintiff in issue and it reflects the "orbit of danger" notion found in *Littlehale*, but no logical reason exists why the status of the defendant should not also be an element to be reckoned with in products litigation. Status, *i.e.*, independent contractor, was clearly an issue in the negligence cases (see *Harris*) and while it is now settled that strict liability and negligence are different torts and are based on different concepts of fault, the "who" elements are common to each. It is the "what" elements that differ.

As we have heretofore stated, not all independent contractors are insulated from liability in products cases, any more than all four-year-olds will be denied recovery in all types of cases under the doctrine of *Winnett*, but it is a factor to be considered and in the case at bar is conclusive.

The decision of the trial court is affirmed.

Affirmed.

GREEN, P. J., and REARDON, J., concur.