**James R. O'CONNER, Plaintiff,**

v.

**COMMONWEALTH EDISON COMPANY, and London Nuclear Services, Defendants.**

No. 88–1272.

United States District Court, C.D. Illinois.

Sept. 26, 1990.

Jay H. Janssen, Peoria, Ill., for plaintiff.

Rex K. Linder, Peoria, Ill., Terrence E. Kiwala, Chicago, Ill., Donald E. Jose, Philadelphia, Pa., for defendants.

## ORDER

MIHM, District Judge.

Before the Court are a Motion by the Defendants for a Determination of the legal duty owed to the Plaintiff (# 73) and a Motion by the Plaintiff to certify an interlocutory appeal under 28 U.S.C. § 1292(b) (# 95). The Court grants the Motion to Determine the Defendants' legal duty (# 73) and grants in part and denies in part the Plaintiff's Motion to Certify an interlocutory appeal (# 95).

## BACKGROUND

This is a "public liability action" under the Price–Anderson Act[1] filed by a radiation worker against an Illinois public utility and its contractor.[2] In this case, the Plaintiff was a radiation worker employed by a contractor to the utility who worked during September and October of 1983. The Plaintiff was employed to prepare the recirculation piping in the dry well of the nuclear power plant for repair of the welds on the piping.

The Plaintiff alleges that he received a large dose of radiation (over 400 rem) from a nuclear flush which caused him to develop cataracts at age 44.[3] The Defendants claim that Plaintiff received a dose of only

---

1. 42 U.S.C. § 2011 *et seq.*

2. The Price–Anderson Act provides omnibus coverage for "public liability," 42 U.S.C. § 2014(w), to the licensee as well as to "any

other person who may be liable...." 42 U.S.C. § 2014(t).

3. The Plaintiff also alleges that he has pulmonary dysfunction and other minor conditions which affect his physical and mental health.

1.465 rem [4], that the flush was only of a dilute chemical used to dissolve radioactive material, and that his cataracts were simply inherited from his father who had the same type of cataracts at age 39. The Court had scheduled a trial so that a jury might determine the dose of radiation which the Plaintiff actually received. However, several issues arose regarding the legal standards to be applied.

## JURISDICTION

The jurisdiction of this Court is based on 42 U.S.C. § 2210(n)(2) which provides in relevant part:

> With respect to any public liability action arising out of or resulting from a nuclear incident, the United States District Court and the district where the nuclear incident takes place, or in the case of a nuclear incident taking place outside the United States, the United States District Court for the District of Columbia, shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant or of the Commission, or the Secretary, as appropriate, any such action pending in any state court (including any such action pending on August 20, 1988) or the United States District Court shall be removed or transferred to the United States District Court having venue under this subsection. . . .

A "public liability action" is "any suit asserting public liability." *See,* 42 U.S.C. § 2014(hh). "Public liability" is defined in the Act as "any legal liability arising out of or resulting from a nuclear incident." *See,*

42 U.S.C. § 2014(w). A "nuclear incident" is defined by the Act as:

> Any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material. . . .

*See,* 42 U.S.C. § 2014(q). Thus, because the Plaintiff alleges that his injuries resulted from exposure to radiation, he has alleged liability resulting from a nuclear incident, making his case a "public liability action" which is subject to compensation under the procedures created by the Price–Anderson Act.

## DOES THE PRICE–ANDERSON ACT WAIVE DEFENSES IN THIS CASE?

■ The Plaintiff argues that the application of the Price–Anderson Act waives the requirement that he must prove negligence and reduces this case to the sole issue of causation. This Court disagrees.

The Price–Anderson Act provides that public liability actions are to be determined in accordance with the law of the state in which the nuclear incident occurred, unless such laws are inconsistent with the provisions of the Price–Anderson Act. 42 U.S.C. § 2014(hh). The question is whether the incident involved in this case was a "nuclear incident" [5] or an "extraordinary nuclear occurrence." [6] Essentially, a nucle-

---

**4.** The Plaintiff admits that he always wore the required radiation measuring instruments whenever he entered any area of the plant which contained radiation. The Defendants' evidence of a dose of 1.465 rem is based on business records which contain the readings of those scientific instruments. The Plaintiff alleges, however, that the numbers were misrecorded at the time and that his dose was really over 400 rem.

**5.** A "nuclear incident" is defined at 42 U.S.C. § 2014(q) to mean "any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss

of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear or byproduct material. . . ."

**6.** An "extraordinary nuclear occurrence" is defined at 42 U.S.C. § 2014(j) to mean "any nuclear event causing a discharge or disbursal of source, special nuclear, or by-product material from its intended place of confinement in amounts off site, or causing radiation levels off site, which the Nuclear Regulatory Commission or Secretary of Energy, as appropriate, determines to be substantial, and which the Nuclear Regulatory Commission or Secretary of Energy, as appropriate, determines has resulted or will

ar incident can be any allegation of personal harm or property damage from exposure to radiation at a commercial nuclear power plant. In contrast, an extraordinary nuclear occurrence is determined by the Nuclear Regulatory Commission or the Secretary of Energy upon a finding that a significant amount of "source, special nuclear, or by-product" radioactive materials have been discharged off-site and "has resulted or will probably result in substantial damages to persons off-site or property off-site." *See,* 42 U.S.C. § 2014(j). Neither the Nuclear Regulatory Commission nor the Secretary of Energy has made a determination that an extraordinary nuclear occurrence occurred in this case, and the Plaintiff does not even allege that there has been any large release of these radioactive materials off-site. The Plaintiff claims to have been injured on-site while working inside the reactor building. Consequently, this case does not involve an "extraordinary nuclear occurrence" under the Price–Anderson Act.

The waiver of defenses which the Plaintiff claims applies to this case is found in 42 U.S.C. § 2210(n). By the very statutory language, that waiver is only applicable to a situation where the Nuclear Regulatory Commission or the Secretary of Energy has already found that an "extraordinary nuclear occurrence" has taken place. In relevant part, the beginning of this section states, "With respect to any extraordinary nuclear occurrence to which an insurance policy or contract furnished as proof of financial protection or an indemnity agreement applies...."

Further, although Congress has recently amended the Price–Anderson Act to allow removal to federal district courts in cases involving both "nuclear incidents" and "extraordinary nuclear occurrences," Congress did not expand the waiver of defenses to apply to "nuclear incidents." 42 U.S.C. § 2210(n)(2). Thus, this Court rejects the assertion that the waiver of defenses should apply to this case.

Given the clarity of the statutory language, this Court does not believe that there is a substantial ground for difference of opinion regarding the question of whether or not the waiver of defenses under the Price–Anderson Act should apply to this case; therefore, the Court denies the Plaintiff's request for certification of this issue. *See,* 28 U.S.C. § 1292(b); *Von Bulow v. Von Bulow,* 634 F.Supp. 1284, 1312 (S.D.N.Y.1986); *In re A.H. Robins Company, Inc.,* 107 F.R.D. 2, 16 (D.Kan.1985).

## DO THE FEDERAL PERMISSIBLE DOSE LIMITS CONSTITUTE THE APPLICABLE STANDARD OF CARE?

■ As stated earlier, public liability actions are to be determined in accordance with the law of the state in which the nuclear incident occurred, unless such laws are inconsistent with the provisions of the Price–Anderson Act. *See,* 42 U.S.C. § 2014(hh).

Under Illinois law, the Plaintiff claims that the Defendants owe to the Plaintiff a duty not to expose him to "excessive" radiation. The Plaintiff never defines how much radiation is excessive as he asserts that evidence of the Defendants' compliance and/or non-compliance with standards, regulations, statutes, and custom are merely evidence of negligence or lack thereof. *See, Darling v. Charleston Hospital,* 33 Ill.2d 326, 332, 211 N.E.2d 253 (1965). The Plaintiff asserts that such evidence aids the jury in deciding what was feasible and what the Defendants knew or should have known, but it does not conclusively determine what standard of care should be applied. *Id.*

The Defendants maintain that the duty owed to a radiation worker is to keep his exposure below the maximum permissible dose set by the Federal Safety Standards which are binding on nuclear power plants. The Defendants argue that the Plaintiff cannot allow a jury of laymen to establish their own permissible dose limits by allowing them to set exposure standards and apply them retroactively to these Defendants. The Defendants contend that, while it is proper for the jury to weigh the evidence in determining as a matter of fact

probably result in substantial damages to persons off site or property off site."

what dose of radiation the Plaintiff actually received, it is not proper to allow the jury to disregard the federal permissible dose limits and effectively set their own. The Defendants assert that the federal permissible dose limits set forth in 10 C.F.R. § 20.101 constitute the applicable standard of care. Even further, if the federal permissible dose limits would not constitute the applicable standard of care under Illinois law, the Defendants assert that it must be applied as the standard of care because application of any other standard of care would be inconsistent with the provisions of the Price–Anderson Act. *See*, 42 U.S.C. § 2014(hh). This Court agrees with the Defendants.

In *Darling*, the court stated:

Custom is relevant in determining the standard of care because it illustrates what is feasible, it suggests a body of knowledge of which the defendant should be aware, and it warns of the possibility of far-reaching consequences if a higher standard is required ...

In the present case the regulations, standards, and by-laws which the plaintiff introduced into evidence, performed much the same function as did evidence of custom. This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did.

*Darling*, 33 Ill.2d at 332, 211 N.E.2d 253.

Although the court did not find that the applicable regulations conclusively determined the standard of care in *Darling*, the Court believes that the regulation in this case can provide the standard of care because this case is distinguishable. Unlike *Darling*, the regulation in this case does not perform the same function as evidence of custom. Custom is a flexible guide for situations in which there is a margin of error. However, the regulation of nuclear energy is an exacting science which requires exacting standards. In other words, nuclear power plants need precise guidelines regulating what is allowable exposure to radiation so that they can place workers in radioactive areas when necessary without the expectation that the worker will be injured or that the power company will incur liability every time a worker receives a low dose of radiation.

Illinois courts have long held that safety standards are relevant to the issue of the duty owed.[7] Many of these Illinois cases are analogous to the *Darling* case in that in those cases the plaintiff used the alleged violation of a statute or regulation as *prima facie* evidence of negligence.[8] The Defendants assert that, if Illinois law allows courts to hold that violation of a safety standard can be *prima facie* evidence of negligence, then the same Illinois law would allow a court to hold that compliance with the safety standard can be *prima facie* evidence of due care. *See, Hunt v. Blasius*, 55 Ill.App.3d 14, 12 Ill.Dec. 813, 815, 370 N.E.2d 617, 619 (4th Dist.1977).

As the Plaintiff notes, however, the cases allowing a party to use a safety standard as *prima facie* evidence of negligence would not necessarily allow the Defendants to use a standard in this case as a mandatory standard under which compliance would automatically constitute due care. Further, the *Hunt* case cited by Defendants held that a manufacturer's compliance with government standards and specifications precluded liability in that case only because compliance with the applicable government standards and specifications in that case was a mandatory requirement for sale of the product to the governmental entity. *Hunt*, 12 Ill.Dec. at 816, 370 N.E.2d at 619. In *Hunt*, the manufacturer could not deviate from the specifications the government provided; there-

---

7. *Davis v. Marathon Oil Company*, 64 Ill.2d 380, 1 Ill.Dec. 93, 97, 356 N.E.2d 93, 97 (1976); *Darling*, 33 Ill.2d at 332, 211 N.E.2d 253; *Avery v. Moews Seed Corn Company*, 131 Ill.App.2d 842, 268 N.E.2d 561, 566 (3rd Dist.1987).

8. *Boyer v. Atchison, Topeka, and Santa Fe Railway Company*, 38 Ill.2d 31, 230 N.E.2d 173 (1967); *Batteast v. Wyeth Laboratories, Inc.*, 172 Ill.App.3d 114, 122 Ill.Dec. 169, 182, 526 N.E.2d 428, 441 (1st Dist.1987); *Pyne v. Witmer*, 159 Ill.App.3d 254, 111 Ill.Dec. 452, 455, 512 N.E.2d 993, 996 (2nd Dist.1987).

fore, the court held that the manufacturer could not be liable. *Id.*

■ In order to determine whether or not the federal regulation in this case can be established as the standard of care, this Court must look to the policy reasons for imposing a duty under Illinois law. Under Illinois law, the duty to be imposed is a question of law to be decided by the Court. *Laufenberg v. Golab,* 108 Ill.App.3d 133, 63 Ill.Dec. 875, 877, 438 N.E.2d 1238, 1240 (3rd Dist.1982). The imposition of a duty is an act of judicial policy making. *Homer v. Pabst Brewing Company,* 806 F.2d 119, 121 (7th Cir.1986). Thus, Illinois courts have extended the concept of duty with caution and restraint. *Id.* Before placing a duty upon a defendant, a court should first consider "the likelihood of injury from the existence of a condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant...." *Barnes v. Washington,* 305 N.E.2d 535, 539 (1973).

The "condition" at issue in this case is the occupational radiation exposure at an operating nuclear power plant. The safety standards set forth in 10 C.F.R. § 20.101 are specifically titled a "permissible dose." It authorizes a utility to allow a radiation worker to receive a dose of up to 3 rem for each quarter of the year (thus up to 12 rem each year) if the utility knows the worker's prior dose and it does not exceed an average of 5 rem per year for each year of the worker's age after 18. If the worker already has an average of 5 rem a year or if the utility does not know the worker's prior dose, 10 C.F.R. § 20.101 limits the permissible dose to 1.25 rem per quarter of the year (thus, 5 rem per year).

These federal permissible dose limits are based upon the national and international scientific consensus as to the hypothetical risk from exposure to low occupational levels of ionizing radiation. *See, Johnston v. United States,* 597 F.Supp. 374, 423–425 (D.Kan.1984); (affidavit of Dr. Lauristin S. Taylor attached to the Defendants' Motion for Summary Judgment referencing the NCRP Report No. 39). In 1948, the National Council on Radiation Protection and Measurements (NCRP) published the National Bureau of Standards Handbook No. 59 which defined the permissible dose as "the dose of ionizing radiation that, in light of the present knowledge, is not expected to cause appreciable bodily injury to people at any time during his lifetime." *Johnston,* 597 F.Supp. at 424–425. Appreciable bodily injury was defined as:

Any bodily injury or affect that the average person would regard as being objectionable and/or competent medical authorities would regard as being deleterious to the health and well-being of the individual.

*Id.* The Defendants assert that this same philosophy and terminology has persisted from 1948 to the present, resulting in the current Nuclear Regulatory Commission dose limits set forth in 10 C.F.R. § 20.101.

In determining the likelihood of the injury from radiation, this Court believes that it should give deference to the administrative regulations which are the result of an agency's applied expertise. Although Illinois courts have not adopted administrative regulations as conclusive of the duty of care, the Illinois Supreme Court has found that regulations are relevant evidence regarding the applicable standard of care. *See, Davis,* 1 Ill.Dec. at 97, 356 N.E.2d at 93.

In addition, Illinois courts have explicitly used the Restatement (2d) of Torts, § 286 to determine the proper duty where there is a regulation or other law relevant to the applicable standard of care. *Davis,* 1 Ill. Dec. at 97, 356 N.E.2d at 97; *Dezort v. Village of Hinsdale,* 35 Ill.App.3d 703, 342 N.E.2d 468, 472 (2nd Dist.1976); *Mangen v. F.C. Pilgrim & Co.,* 32 Ill.App.3d 563, 336 N.E.2d 374, 381 (1975). The Restatement (2d) of Torts, § 286 provides:

The court may adopt as a standard of conduct of a reasonable man the requirements of a legislative enactment or administrative regulation whose purpose is found to be exclusively or in part (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect a particular interest which is invaded, and (c) to protect that interest

against the kind of harm that has resulted, and (d) to protect that interest against the particular hazard from which the harm results.

Restatement (2d) of Torts, § 286 (1965).

Each of the four § 286 elements apply to this case. First, the purpose of the federal permissible dose regulations is to protect radiation workers. *See,* 10 C.F.R. § 20.101; *Johnston,* 597 F.Supp. at 423–425; *Bubash v. Philadelphia Electric Company,* 717 F.Supp. 297, 299 (N.D.Pa.1989). The plaintiff was a radiation worker at the time he received his radiation exposure in this case.

Second, the "interest" which the Plaintiff claims has been invaded in this case is the radiation exposure which he received as a radiation worker, precisely the focus of the regulation and the particular interest which it was created to protect. 10 C.F.R. § 20.101.

Third, the regulations were enacted to protect that interest against precisely the kind of harm (i.e., radiation-induced physical injury) that the Plaintiff alleges has resulted. The regulation is specifically labeled "radiation dose standards for individuals in restricted areas." 10 C.F.R. § 20.101; *Johnston,* 597 F.Supp. at 390–391.

Fourth, the regulations were enacted to protect that interest against the particular hazard (i.e., excess exposure) from which the Plaintiff claims harm has resulted. (*See,* affidavit of Dr. Lauristin S. Taylor).

In a highly technical field such as this, although a plaintiff should be provided a very high level protection from excessive exposure from radiation, a defendant public utility should also be provided with some clear statement regarding how it may limit a worker's dose without exposing the worker to injury or itself to liability.

In addition, federal courts have held that mere exposure to a low dose of radiation is not the equivalent of a physical injury[9] and that the chance that a low dose of radiation caused cancer is so remote as to constitute speculation.[10]

Finally, the Atomic Energy Act sets forth an extensive regulatory licensing scheme pursuant to which nuclear power facilities are operated. There are two aspects of the federal regulatory scheme governing the operation of nuclear power plants which are relevant to the issues here. One is the federal regulatory framework governing the permissible dose limits allowed at nuclear power plants. The other is the regulatory framework governing actions for claims arising out of the doses received at the plant. Both confirm a paramount federal interest.

Nuclear power plants may not be operated without a license from the United States Nuclear Regulatory Commission (NRC). 10 C.F.R. §§ 30.3, 50.57, and 52.1. Public utilities which choose to produce electricity for the public through the use of nuclear power must comply with the extensive federal regulation which exists in this unique field. *See,* 10 C.F.R. § 50.57(a)(2). 10 C.F.R. § 20.101 sets detailed exposure safety regulations for the radiation workers who elect to work in this field. *Bubash,* 717 F.Supp. at 298. This regulation expressly recognizes that radiation workers of necessity will receive some low level radiation exposure because some exposure is an unavoidable aspect of working in a radiation area (just as it is an unavoidable aspect of receiving a medical x-ray). The Price–Anderson Act only allows the application of state law as long as it is not contrary to the Act, (*see,* 42 U.S.C. § 2014(hh)). If the application of Illinois law does not result in the adoption of the federal permissible dose limits as the duty owed by the Defendants, this Court believes that Illinois law would be inconsistent with federal law and that federal law would have to take precedence.

■ This Court further finds that the question of whether or not the regulation in this case should be adopted as the standard of care applicable to this case is an issue which should be certified under 28 U.S.C. § 1292(b). This issue is an issue of

---

**9.** *Bubash,* 717 F.Supp. at 300; *Laswell v. Brown,* 683 F.2d 261, 269 (8th Cir.1982).

**10.** *Johnston,* 597 F.Supp. at 425–426.

first impression and is of a controlling nature in this case. The issue is of a controlling nature because the extent of the duty owed may determine whether or not a jury could find in favor of the Plaintiff. Further, there is a substantial ground for difference of opinion because this Court has not found federal law or Illinois law which has applied regulatory standards as mandating a particular standard of care for a defendant.

Also, an immediate appeal from this Court will materially advance the ultimate termination of this litigation as this Court believes that this case will take approximately one month to try. If this case is tried, this Court certainly believes that this issue will be appealed and this case possibly retried; therefore, the Court believes that this appeal will materially advance the termination of this litigation.

### CONCLUSION

In sum, the Court GRANTS the Defendants' Motion to Determine its legal duty to the Plaintiff (# 73). And, the Court GRANTS the Plaintiff's Motion to Certify an interlocutory appeal in part and DENIES it in part (# 95).