Kevin D. COLEY, individually and as Special Administrator of the Estate of Rebekah Ann Coley, Deceased, Marshal L. Coley, Robert Andrew Perino, a minor by his father and next friend, Michael A. Perino, Michael A. Perino, individually and Karen M. Perino, Plaintiffs,

v.

COMMONWEALTH EDISON COMPANY, Defendant.

No. 88 C 7830.

United States District Court, N.D. Illinois, E.D.

May 10, 1991.

John Patrick Healy, Sheryl Elwood Healy, Law Office of John Patrick Healy, Chicago, Ill., for plaintiffs.

John G. Poust, Terrence Michael Burns, Frank C. Rowland, Rooks, Pitts & Poust, Chicago, Ill., Donald E. Jose, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on the defendant's motion for summary judgment. The motion challenges the plaintiffs' ability to prove two elements of their case: negligence on behalf of the defendant and a causal link between the defendant's conduct and the alleged injuries. Because the plaintiffs are unable to provide sufficient basis on which a jury might find negligence, this court will grant summary judgment in favor of the defendant without addressing the causation issue.

## BACKGROUND

In 1981 Rebekah Coley was born with a birth defect known as Trisomy 18. Three years later, Robert Perino was born with the same defect. The fathers of both children, Kevin Coley and Michael Perino, worked for Defendant Commonwealth Edison Company ("ComEd") at its Dresden Plant. In the course of their work, the defendants were exposed to ionizing radiation.

During the reproductive process, chromosomes normally separate and move to opposite ends of the cell wall. When the cell divides, each of the new cells have one of the formerly joined chromosomes. Nondisjunction is an abnormal process in which the chromosomes fail to separate. The result is the formation of one cell with an extra chromosome and one cell with a chromosomal deficiency. Such nondisjunction may occur in either the egg or the sperm. In Trisomy 18 a sperm or egg containing two number 18 chromosomes joins with a healthy egg or sperm and develops into a child who has three rather than the normal two number 18 chromosomes and a very limited life expectancy.

The plaintiffs believe that the nondisjunction leading to Rebekah's and Robert's Trisomy 18 occurred in their fathers' sperm. They further believe that such nondisjunction was caused by the fathers' occupational exposure to radiation in the six months prior to the children's conception. As a result, the plaintiffs argue, ComEd should be liable in tort.

Earlier this year, this court determined that a strict liability theory was not viable against public utilities such as ComEd. *Coley v. Commonwealth Edison Company*, No. 88 C 7830, Memorandum Opinion, 1991 WL 10910 (N.D.Ill. January 25, 1991). Accordingly, if the plaintiffs are to succeed on their claims, it must be pursuant to a negligence theory. That is, the plaintiffs must show that ComEd knew or should have known in the early 1980s that the occupational doses to which Messrs. Coley and Perino were exposed could cause defects in their unconceived children and failed to take adequate steps to protect against that reasonably foreseeable result.

To support their claims the plaintiffs have submitted deposition testimony and several recent reports suggesting some association between parental exposure to radiation and chromosomal damage. The plaintiffs' primary expert witness, Dr. Alice Stewart, is a radiation epidemiologist whose theories have not gained wide acceptance in that portion of the scientific community that studies the effects of radiation on humans. Dr. Stewart testified that although there is no known cause of Trisomy 18, radiation is known to cause chromosomal damage and Trisomy 18 could

be a variant of such chromosomal damage known to be caused by radiation. Stewart 1990 deposition at 99. The plaintiffs' other experts are the children's doctors. Dr. Roth testified that he could not say with a reasonable degree of medical certainty that Rebekah's condition was causally related to her father's pre-conception exposure to radiation. (Roth deposition at 12). Dr. Salafsky, Robert Perino's doctor, testified that he believed his patient's condition "could have" been caused by paternal exposure to radiation. Salafsky deposition at 25. The recent studies relied upon by the plaintiffs were issued in the last four years. The studies suggest that there is a connection between parental exposure to radiation and birth defects such as Trisomy 21 (Down's Syndrome) or child cancer.

Absent from the documents submitted by the plaintiff is any basis upon which a jury could find that the defendant knew or should have known that paternal exposure to radiation could cause birth defects at the time the allegedly injurious exposure occurred. To the contrary, the documents submitted by both parties indicate that in the mid–1980s, the generally accepted view was that pre-conception exposure to either parent, and to fathers in particular, had at most negligible affect on the later-conceived offspring. This view was supported by the studies which demonstrated no increase in nondisjunctional events in the offspring of the A-bomb survivors in Nagasaki and Hiroshima. Although recent reports have questioned the accuracy of these studies, such discrediting does not detract from the fact that in the early 1980s the prevalent scientific view was that paternal exposure to radiation did not impact on future offspring.

ComEd is a licensee of the Nuclear Regulatory Commission ("NRC") and is required to adhere to the regulations set by that body. *See* 10 C.F.R. § 20.1(b), 50.54(h). The regulations promulgated by the NRC include maximum permissible dose limits for different categories of individuals. Such limits were based on the existing national and international consensus regarding the levels of radiation at which no appreciable bodily injury was expected.

Pursuant to these regulations, workers such as Kevin Coley and Michael Perino may only be exposed to 5 rem per year of radiation, while minors under 18 may only be exposed to .5 rem per year. Until 1985, .5 rem was also the limit prescribed by the International Commission on Radiological Protection ("ICRP") for the general population. The parties agree that Messrs. Coley and Perino were exposed to less than 5 rem but more than .5 rem per year during the relevant time period.

The record further indicates that Dr. Stewart's theories have been very controversial and have not gained wide acceptance in the scientific field; the studies indicating a causal relation between radiation and cancer may not be relevant to this case since the two conditions are caused by very different phenomena; there is no report in studies of humans associating radiation and Trisomy 18; animal studies indicate that nondisjunction is not one of the principal effects of radiation, and that very high doses are needed to produce trisomies; preceding the conception of the children, there was only one study, apparently not widely accepted, connecting pre-conceptual radiation to health problems in off-spring and this study did not involve Trisomy 18; in the early 1980s it was the accepted belief that paternal radiation exposure had negligible if any affect on off-spring; and even today questions about the human health effects caused by low doses of radiation are extremely controversial.

The defendant argues that summary judgment is appropriate on the issue of negligence because (A) its compliance with the NRC regulations conclusively proves that it was not negligent in the amount of radiation to which it allowed its male employees to be exposed; and (B) even if the regulations are not deemed determinative of the issue, the plaintiffs are unable to show that ComEd knew or should have known that paternal exposure would cause Trisomy 18 in yet-to-be-conceived offspring.

In opposition to this motion, the plaintiffs make essentially two arguments. First, they argue that under Illinois law the regulations are not determinative of the care

due to Kevin Coley and Michael Perino. Next they argue that, even if the NRC regulations are determinative, ComEd owed directly to the children of its workers a duty which is defined by those regulations setting the maximum permissible dose limits for minors or for the general population.

## LEGAL STANDARD

Under the Federal Rule of Civil Procedure 56 summary judgment is warranted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). This rule mandates summary judgment against a party who, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case and upon which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Moreover, the "complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.*

In requesting summary judgment the moving party bears the initial burden of establishing the absence of a material issue of fact. Once that burden is met, the plaintiff must produce specific facts and documentary evidence showing a genuine issue of material fact still exists and justifies trial. *Randall v. La Salle Telecommunications, Inc.*, 876 F.2d 563, 567 (7th Cir. 1989). At all times, reasonable inferences are drawn and the facts are viewed in the light most favorable to the nonmovant. *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Only if it is beyond doubt that a reasonable jury could not find in favor of the nonmovant may summary judgment be granted.

## DISCUSSION

This case was removed to federal court in accordance with the Price–Anderson Amendments Act of 1988, 42 U.S.C. § 2014(hh). That act provides a federal forum for nuclear incident cases. However, instead of providing a federal tort law for deciding such cases, Congress stated that cases covered by the act should be decided pursuant to the law of the state in which the nuclear incident occurred, "unless such law is inconsistent with the provisions of [§ 2210]." 42 U.S.C. § 2014(hh).

A claim for negligence under Illinois law has three elements: the existence of a duty, the breach of that duty, and an injury proximately caused by the breach. *Kirk v. M. Reese Hospital & Medical Center*, 117 Ill.2d 507, 111 Ill.Dec. 944, 513 N.E.2d 387, 395–6 (1987) (citations omitted). The inability to prove any one of these elements justifies summary judgment in favor of the defendant. *See Celotex Corp.*, 106 S.Ct. at 2552.

### A. NRC regulation determinative of the standard of care

#### 1. *Applicable Regulations*

Pursuant to the NRC regulations, a licensee such as ComEd may permit a worker in restricted areas to receive "a total occupational dose to the whole body" of 3 rems per quarter or 5 rems per year. 10 C.F.R. § 20.102(b)(1). The phrase "whole body" is defined to include the gonads. 10 C.F.R. § 20.102(b)(3). This is clearly the regulation applicable to the allegedly injurious exposure in this case. The NRC has also set a separate dose limit for persons under 18 years of age, *see* 10 C.F.R. § 20.104, the NRC Regulatory Guide interpreting this regulation states that it does not relate to embryos or fetuses. Regulatory Guide 8.13 (1977). The ICRP has prescribed a third limit for the general, non-radiation worker population. This regulation is also inapplicable since the doses at issue in this case were received in the course of employment in restricted areas.

#### 2. *Standard of Care*

■ Two courts in this district have held that the NRC regulations are determinative

of the standard of care in occupational exposure cases. *Jurka v. Commonwealth Edison Company,* No. 88 C 7852, Transcript of Proceedings at 4 (N.D.Ill. August 9, 1990); *O'Conner v. Commonwealth Edison Company,* 748 F.Supp. 672, 676 (C.D.Ill.1990). Both courts supported their decisions with reference to the Restatement (2nd) of Torts § 286, which has been cited with approval by Illinois courts. *See O'Conner,* 748 F.Supp. at 677, *Jurka,* Transcript at 4.

Section 286 provides:

The court may adopt as a standard of conduct of a reasonable man the requirements of a legislative enactment or administrative regulation whose purpose is found to be exclusively or in part (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect a particular interest which is invaded, and (c) to protect that interest against the kind of harm that has resulted, and (d) to protect that interest against the particular hazard from which the harm results.

Restatement (2d) of Torts, § 286 (1965). The NRC safety regulations fall squarely within this section. The purpose of the regulations is to protect radiation workers including Kevin Coley and Michael Perino; the interest allegedly invaded is the right to be free from unreasonably high doses of radiation; the regulations at issue were enacted to protect that interest from the appreciable bodily injury that has allegedly resulted; and the regulations seek to protect that interest by guarding against excess exposure, the cause alleged in this case. *O'Conner,* 748 F.Supp. at 677–78.

■ The *O'Conner* Court also noted policy reasons for adopting the regulations as the applicable standard of the case. The regulations expressly recognize that some exposure of radiation workers to radiation is unavoidable, and therefore prescribe the permissible dose limits. Compliance with these dose limits is mandatory. 10 C.F.R. § 50.57(a)(2). Finally, in the highly technical field of radiation there is a need for clear statements of how to "limit a worker's dose without exposing the worker to

injury or itself to liability." *O'Conner,* 748 F.Supp. at 678. In this context, a state rule setting a broader standard of care could disturb the regulatory scheme established to balance the need for protection and clarity. Since the regulatory scheme governing the nuclear power industry indicates a paramount federal interest, such a state rule must be rejected as contrary to the Price–Anderson Act. *See O'Conner,* 748 F.Supp. at 678.

The plaintiffs have not persuasively argued for a departure from the *Jurka* and *O'Conner* holdings nor proposed an alternative standard of care. Accordingly, because we find adoption of the regulations is to be at once reasonable and not inconsistent with state law, this Court will adhere to the approach taken by the *Jurka* and *O'Conner* courts.

Pursuant to that approach, ComEd's undisputed compliance with the applicable regulations conclusively proves the absence of negligence in this case. Therefore, summary judgment in favor of the defendant is appropriate.

**B. NRC regulations as prima facie proof on the negligence issue**

■ The plaintiffs argue that at most Illinois law considers compliance or noncompliance with administrative regulations as *prima facie* proof of negligence. This position finds support in the Illinois case law. *See Darling v. Charleston Community Memorial Hospital,* 33 Ill.2d 326, 211 N.E.2d 253 (1965); *Davis v. Marathon Oil Co.,* 64 Ill.2d 380, 1 Ill.Dec. 93, 356 N.E.2d 93 (1976). The plaintiffs have failed, however, to indicate any other factor to which the trier of fact's attention may be drawn in deciding whether ComEd was or should have been aware in the early 1980s that paternal exposure would endanger the offspring of its employees. To the contrary, the record indicates that the generally accepted view on the part of the relevant scientific communities was that congenital injury could not be caused by paternal exposure to radiation, and that the only known factor contributing to Trisomy 18 was maternal. The fact that the generally

accepted theories were or are being drawn into question by a few controversial scientists and theorists does not provide sufficient basis for a reasonable jury to find that the defendant reasonably should have foreseen the type of injury that allegedly occurred in this case. Thus, even under the plaintiffs' interpretation of state law, summary judgment is warranted in this case.