Gloria J. LOKOS and John S. Lokos, Plaintiffs,

v.

Detroit EDISON, Defendant.

No. 98–CV–60248–AA.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 1, 1999.

Richard B. Poling, Sr., Veronica B. O'Hara, Troy, MI, for Plaintiffs.

Scott L. Gorland, Detroit, MI, for Defendant.

David Wiedis (argued), Donald E. Jose, Kristen B. Komer, Westchester, PA, for Defendant.

*ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT*

STEEH, District Judge.

Plaintiff Gloria Lokos sued her former employer, defendant Detroit Edison, alleg-

ing that she developed thyroid cancer due to radiation exposure while living near and working at defendant's Fermi Power Plant. Plaintiffs' lawsuit arises under the Atomic Energy Act of 1954, 42 U.S.C. § 2201 *et seq.*, as amended by the Price–Anderson Act and the Price–Anderson Amendments Act of 1988. Defendant moves the court to enter summary judgment for the reason that plaintiffs have failed to establish either (1) a dose in excess of the federal permissible dose limits, or (2) an extraordinary nuclear occurrence. Plaintiffs oppose the motion for summary judgment, and seek leave to file a second amended complaint. Plaintiffs' proposed amendment would add exposure Mrs. Lokos received while living near the plant from 1965 to 1977, prior to her employment by defendant.[1]

### PROCEDURAL BACKGROUND

Plaintiffs' original complaint was filed in state court and alleged common law negligence, strict liability and loss of consortium. Defendant removed the complaint based on complete preemption under the Atomic Energy Act, as amended. Under the Act, "claims for any legal liability arising out of or resulting from a nuclear incident," are to be brought in a federal cause of action known as a "public liability action" or a "PLA". *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1306 (11th Cir.1998). Defendant previously filed a motion to dismiss plaintiffs' action for the reason that they failed to allege exposure to a dosage of radiation in excess of the federal permissible dose limits. The court denied defendant's motion to dismiss, and permitted plaintiffs to amend their complaint to comply with the pleading requirements of a PLA. Discovery in this matter has been bifurcated, with discovery on preliminary issues, including Mrs. Lokos' exposure to radiation, having closed on May 3, 1999.

### FACTUAL BACKGROUND

The Enrico Fermi Nuclear Power Plant Unit 1 ("Fermi 1") and Fermi Unit 2 ("Fermi 2") are owned and operated by defendant Detroit Edison. Construction of Fermi 1 was completed in 1963, and it received a high power operating license in 1965. In October 1966 Fermi experienced an event which damaged its reactor core, rendering Fermi 1 inoperative for nearly four years. After undergoing repairs, Fermi 1 was restarted in July 1970, but was permanently shut down in September 1972. The nuclear fuel was shipped offsite in 1973, and Fermi 1 was retired in December 1975.

Mrs. Lokos lived in Taylor, Michigan from 1958 until 1965, about twenty-seven miles from Fermi. She then resided in Newport, Michigan between 1965 and 1977, about one mile from Fermi. During this period, Mrs. Lokos swam in the waters of Lake Erie, which surrounds the power plant. Mrs. Lokos returned to Taylor from 1977 until 1981.

Mrs. Lokos was employed by the prime contractor, Daniel International Corp. ("Daniel"), at Fermi 2 during the construction of that unit between 1976 and 1981. She was a clerk for the first year and a half, and then worked as a planner and scheduler. Fermi 2 began low power testing in March 1985, four years after Mrs. Lokos' employment at Fermi ended. Mrs. Lokos left Fermi in 1981 to take a job at the Satsop nuclear plant in the State of Washington. In May 1997, Mrs. Lakos was diagnosed with follicular thyroid cancer.

### STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affida-

---

1. For purposes of defendant's summary judgment motion, the court will consider the years

1965 to 1977 in addition to those covered in plaintiffs' first amended complaint.

vits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See FDIC v. Alexander,* 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line,* 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Resources Corp.,* 42 F.3d 981, 984 (6th Cir. 1994) (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'r,* 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Companies, Inc.,* 952 F.2d 942, 945 (6th Cir.1992). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 774 (6th Cir.1996).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Further, the nonmoving party cannot rest on its pleadings to avoid summary judgment. It must support its claim with some probative evidence. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

## ANALYSIS

Plaintiffs bring this Public Liability Action under the Price Anderson Amendments Act, 42 U.S.C. § 2210, which creates "an exclusive federal cause of action for radiation injury." *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1306 (11th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1027, 143 L.Ed.2d 38 (1999). To prevail, a plaintiff may base her position on one of two theories: the "nuclear incident" theory or the "extraordinary nuclear occurrence" theory, which imposes strict liability.

■ Essentially, a "nuclear incident" can be any alleged personal harm or property damage from exposure to radiation at a commercial nuclear power plant. *O'Conner v. Commonwealth Edison Co.,* 748 F.Supp. 672, 675 (C.D.Ill.1990). A "nuclear incident" is specifically defined as:

> any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . .

42 U.S.C. § 2014(q). In contrast, an "extraordinary nuclear occurrence" is determined by the Nuclear Regulatory Commission or the Secretary of Energy upon a finding that a significant amount of "source, special nuclear, or by-product" radioactive materials have been discharged off-site and "has resulted or will probably result in substantial damages to persons off-site or property off-site." *O'Conner,* 748 F.Supp. at 675 (citing 42 U.S.C. § 2014(j)). Plaintiffs do not pursue an extraordinary nuclear occurrence theory, and proceed only with their nuclear incident theory.

■ To prevail in their PLA, plaintiffs must prove two essential elements: (1) Mrs. Lokos' exposure exceeded the federal numerical dose limits; and (2) such overexposure caused her to suffer a compensable injury under the Amendments Act. *O'Conner v. Commonwealth Edison Co.,* 807 F.Supp. 1376, 1378 (C.D.Ill.1992). Defendant argues that summary judgment is appropriate because plaintiffs have failed to demonstrate that Mrs. Lokos' dose exceeded the federal dose limits. Defendant further maintains that plaintiff is required to produce expert testimony to establish that her dose exceeded the limits. *Id.* at 1401 ("Dose is a subject requiring expert testimony because it is well beyond the knowledge and expertise of any average person.").

Plaintiffs contend that residents living near nuclear power plants are not required to establish that they were located in areas exposed to radiation in excess of that allowed under federal regulations in order to establish a breach of duty by owners and operators of the plants. Rather, plaintiffs argue, a breach occurs whenever excessive radiation is released, whether or not anyone is present in the area exposed. *In re TMI,* 67 F.3d 1103, 1116–1118 (3rd Cir. 1995). In *In re TMI,* defendants admitted that the federal release limits were exceeded at the site boundary, but here Detroit Edison has not made such an admission, and plaintiffs have produced no evidence to demonstrate the federal limits were exceeded at Fermi.

■ As evidence that excessive radiation was released at Fermi, plaintiffs allege that in October 1966, there was a "meltdown" at Fermi 1. During this alleged event, Mrs. Lokos was living one mile from Fermi 1 and swam in the waters surrounding the plant. Mrs. Lokos learned about the "meltdown" from a book she read entitled, *We Almost Lost Detroit,* by Robert Fuller. Defendant maintains that this book does not document a release of radiation from Fermi 1, but merely speculates about what might have happened if the operators had not successfully controlled the event.

Defendant supplies the Declaration of Ronald Gillmore, a health physicist at Fermi 2. Mr. Gillmore's responsibilities include oversight of the Radiological Health Group which provides external dosimetry support, respiratory protection, environmental monitoring and maintenance of radiological records. Mr. Gillmore states that during the entire operation of Fermi 1 there have never been any releases that exceeded the radiation safety standards established by the federal regulations. (Gillmore Declaration, ¶ 4). Gillmore explains that the plant developed more restrictive technical specifications, less than the federal permissible dose limits, which were never exceeded at Fermi 1.

Regarding the October 1966 "event", Fermi 1 was operating at 15% power when less than one percent of its reactor core was damaged. A small amount of radiation was released into the environment for a short duration. The level of radiation released was about five hundred times less than the amount routinely allowed by the plant's technical specifications. (Gillmore Declaration, ¶ 7). Gillmore reviewed the environmental monitoring data that measured the radiation released from Fermi 1 during the month of October 1966. The data shows no measurable increases of radiation above natural background radiation.

(Gillmore Declaration, ¶ 8). In addition, Gillmore reviewed the radiation measurements made by dosimeters worn by over three hundred nuclear workers during the month of October 1966. These measurements confirm that there was no measurable radiation release as a result of the October 1966 event. (Gillmore Declaration, ¶ 9).

Mrs. Lokos alleges that she was exposed to radiation in her position as a planner and scheduler, which required her to go into the field and verify that certain work had been performed. However, unless plaintiffs can show that an amount of radiation in excess of federal regulations was released by Fermi 1 or Fermi 2, the fact that she worked in various areas of the plant is not relevant to her PLA. Plaintiffs have produced no such evidence.

On the issue of causation, plaintiffs submitted the deposition of Mrs. Lokos' treating surgeon, Dr. Patricia Gilmer. Dr. Gilmer testified that radiation is a known risk factor for the follicular cell type of thyroid cancer from which Mrs. Lokos suffers. (Gilmer deposition, p. 5). Dr. Gilmer also testified that she did not tell Mrs. Lokos that working at a nuclear power plant caused her cancer, only that it could be a risk factor. (Gilmer deposition, p. 19–20). Dr. Gilmer did not opine in her deposition that exposure to radiation caused Mrs. Lokos' cancer, stating that "I don't know what radiation she had, and I can't comment on that." (Gilmer deposition, p. 19).

Defendant submits the declaration of Dr. John Dunning Boice, Jr., an alleged expert in the health effects of radiation. Dr. Boice explores the relative risk ratio of cases of thyroid cancer in a population of people exposed to the substance being studied compared to a population of unexposed persons. Dr. Boice has been involved in numerous studies examining the association between radiation and thyroid cancer. (Boice Declaration, ¶ 8). Based on these studies, Dr. Boice states his opinion that radiation does not cause thyroid cancer in adults who are exposed after age twenty, unless they are exposed to very high radiation such that might occur during medical treatments for cancer. (Boice Declaration, ¶ 8). As for the type of thyroid cancer caused by exposure to radiation, Dr. Boice found that 97% of the cancers among atomic bomb survivors were papillary, and that follicular thyroid cancer is seen much more rarely in populations exposed to radiation. (Boice Declaration, ¶ 8). Dr. Boice participated in a National Institutes of Health study of cancer mortality in areas near nuclear power plants, including the Fermi plants. The study examined data from 1950 through 1984, and found no statistically significant increase in thyroid cancer mortality among people living near the Fermi plant. (Boice Declaration, ¶ 12).

In response to Dr. Boice's declaration, plaintiffs point out that Mrs. Lokos was only 19 when she lived one mile from Fermi and swam in Lake Erie, and she was only 20 in 1966 at the time of the Fermi 1 "event". For purposes of discussion, the court is willing to find that plaintiffs have succeeded in raising an issue of material fact with regard to causation.

However, even if plaintiffs have established an issue of material fact with regard to causation, they have failed to present evidence that radiation from Fermi exceeded the federal numerical dose limits. In order to prevail on their PLA under the nuclear incident theory, plaintiffs must show both elements—exposure and causation. Plaintiffs have produced no evidence of exposure, and therefore, the court GRANTS defendant's motion for summary judgment.[2]

Plaintiffs have also brought a motion to file a second amended complaint, seeking to add exposure Mrs. Lokos received from

---

**2.** Plaintiff Mr. Lokos' claim is for loss of consortium, a derivative claim which depends on the success of Mrs. Lokos' claim. *Long v.*

*Chelsea Community Hosp.,* 219 Mich.App. 578, 589, 557 N.W.2d 157 (1996).

Fermi during the years 1965 to 1977. The court took plaintiffs' evidence from these years into account in considering the pending motion for summary judgment, and concludes that the proposed new allegations do not lend any support to plaintiffs' original claims and are therefore futile as a matter of law. The court therefore DENIES plaintiffs' motion for leave to amend. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

## *CONCLUSION*

For the reasons stated, defendant's motion for summary judgment is GRANTED and plaintiffs' motion to file a second amended complaint is DENIED.

## *JUDGMENT FOR DEFENDANT*

Defendant's motion for summary judgment was entered by the Court on September 1, 1999.

IT IS HEREBY ORDERED that judgment be, and hereby is, entered for defendant.

SO ORDERED.